# MIKE MATYASOVICH, Appellant, *v.* JOHN PETRICCIANI, Respondent.

No. 3270

February 13, 1941.       110 P.(2d) 206.

*E. P. Carville* and *Thomas O. Craven,* for Appellant.

*Platt & Sinai,* for Respondent.

## OPINION

By the Court, TABER, J.:

Appellant and respondent were plaintiff and defendant, respectively, in the trial court; they will sometimes be so designated herein.

Respondent is the owner of the premises in which he conducts a gambling and liquor establishment known as the Palace Bar, or Palace Club, in the city of Reno. On May 31, 1935, appellant took a five-year lease on the rear portion of said club, went into possession on the following day and conducted a restaurant business there until June 15, 1936. The agreed rental for the five-year term was $11,400, to be paid in sixty monthly payments, $175 monthly in advance for the first two years, and $200 monthly in advance for the remainder of the

term. The five-year term was to and did commence on the first day of June 1935, at which time appellant paid respondent $375, being $175 for the first month and $200 for the last month.

When appellant took the lease, he purchased from respondent certain equipment and utensils, paying therefor $1,170. He also claims to have expended at that time the further sum of $4,600 in equipping and preparing the leased premises for use as a restaurant and lunchroom. He testified that from June 1, 1935, to June 15, 1936, the business netted him approximately $11,500.

The lease, though reduced to writing on May 31, 1935, was not actually executed until June 11, 1936. On this latter date the parties executed a new written agreement by the terms of which appellant released and relinquished to respondent the premises described in the original lease, for the period from June 15, 1936, to September 30, 1936. Respondent agreed to pay appellant, during this period, $10 a day, and released appellant from payment of any rentals in the meantime. It was further agreed that respondent, at his own expense, would remove appellant's equipment, store it in a warehouse, and cause it to be returned to the premises immediately after September 30, 1936, and reinstalled therein in the same condition and in the same manner as it was at the time the new agreement was entered into, so that appellant might recommence a restaurant business in said premises on October 1, 1936. By the provisions of this new agreement it was understood that, except as therein provided, all the terms and provisions of the lease of May 31, 1935, should remain in full force and effect and that the rentals therein provided should recommence upon the 1st day of October, 1936, at which time all the terms and provisions of said lease should again become operative as to both parties.

Pursuant to the new agreement, respondent took possession, caused appellant's equipment to be removed

and stored, and proceeded to use the premises in connection with his gambling business.

While not mentioned in the new agreement, it appears that, in addition to the $10 per day to be paid appellant, he was also to be allowed the use of two gambling tables, the profit from which was to be divided three ways among appellant, respondent, and a third party associated with appellant. The record does not show what, if any, profit was made from these two tables, either before or after October 1, 1936. If any profit was made, there is nothing in the record to show that appellant did not receive his share.

About the middle of September 1936, or shortly thereafter, negotiations took place between the parties concerning a proposed sale by appellant to respondent of the remainder of the term. Appellant testified that he told respondent those negotiations would have to be concluded one way or the other not later than about a week before October 1, 1936, so that in the event they broke down, appellant would have time to prepare for resuming his restaurant business on that day. No agreement was reached on the proposed sale by October 1, and on September 30 and again on October 1 appellant tendered to respondent the rent for October, at the same time demanding to be put in possession in accordance with the terms of the agreement of June 11. Respondent did not accept the rent money, and testified that when it was tendered, he told appellant it would be impossible to reinstall the equipment and give him possession in one day. He further testified that the negotiations for sale continued until about the middle of October, at which time, the negotiations having failed, appellant was orally notified that he would be restored to possession. At the request of respondent, appellant's books were turned over to the former. They were gone over, after October 1, by an accountant employed by respondent. The latter testified that the purpose in examining the books was to endeavor to agree upon a

price for the sale by appellant to respondent of the remainder of the term. Appellant, however, testified that the sole purpose of the examination was to arrive at the amount of damages resulting to him by reason of respondents failure to give him possession on October 1. It is undisputed that on October 19, 1936, respondent notified appellant, in writing, that the leased premises would be ready for occupancy by the latter on October 26, 1936, and that the restaurant equipment would be returned and reinstalled under the terms and conditions of the new agreement of June 11, 1936. On October 20, 1936, appellant notified respondent, in writing, that the former considered the original lease, as well as the new agreement, terminated, and that the lease and subsequent agreement had both been breached and violated by respondent. Thereafter, on November 2, 1936, appellant, as plaintiff, commenced this action in the Second judicial district court, Washoe County, and demanded judgment against respondent, as defendant, for damages in the total sum of $47,937.66, being $42,167.66 general damages, and a further $5,770 by reason of his equipment having become valueless.

In his answer defendant, among other things, denied that plaintiff while in possession had realized net profits in the amount alleged in the complaint or any other amount; he further denied that he had breached or violated in any respect or at all either the original lease or the agreement of June 11, 1936, or any provision of either of them; he denied that plaintiff had expended $4,600 or any other sum in equipping and preparing the leased premises for use as a restaurant and lunchroom; and denied that plaintiff had been damaged in any sum or at all. In his said answer defendant alleged that his failure to restore the leased premises to plaintiff's possession on October 1, 1936, was through no fault of his own, but was the direct result of the negotiations between the parties looking to a sale of the remainder of the term, which negotiations continued

with the full consent and approval of plaintiff beyond the said 1st day of October; he further alleged that as soon as it was found the parties could not agree on a sale price, defendant, about October 15, 1936, notified plaintiff orally that his equipment would be reinstalled at defendant's expense, and further notified plaintiff, in writing, on October 19, 1936, that the leased premises would be ready for plaintiff's occupancy as a restaurant business on October 26, 1936, and that the equipment theretofore removed and stored under the terms and conditions of the agreement of June 11, 1936, would be returned to the leased premises and reinstalled therein under the terms of said agreement in the same condition and in the same manner as when removed, and at defendant's expense; he alleged also that on October 20, 1936, plaintiff without cause rejected defendant's written offer of the preceding day, refused to reenter the leased premises, and notified defendant that he, plaintiff, considered the lease of May 31, 1935, and the agreement of June 11, 1936, terminated.

Plaintiff having filed his reply to defendant's answer, the case proceeded to trial, and the district court awarded plaintiff judgment against defendant in the sum of $400, being $200 damages ($10 per day) sustained by plaintiff from October 1 to October 20, 1936, and a further $200 by reason of the amount paid at the beginning of the lease as rental for the last month of the term. Plaintiff has appealed from said judgment, and from an order denying a new trial.

It is appellant's contention that respondent's failure to restore him to possession on October 1, 1936, amounted to constructive eviction of appellant, and that the latter was not only legally justified in terminating the lease, but was also entitled to recover as damages the value of the remainder of the term, besides special damages. In arriving at such value, appellant argues that the profits realized by him should be used as a basis; or if not, that the amount of general damages

should be the market value of the remainder of the term, which he testified was $35,000. There is a sharp conflict in the testimony, both as to the amount of plaintiff's profits and the market value of the remainder of the term. As against plaintiff's testimony that his net profits averaged nearly $1,000 a month and that the market value of the remainder of the term was $35,000, the testimony given in behalf of defendant was to the effect that, because of the high rent and other overhead, plaintiff's profits, if any, were small, and the remainder of the term of little if any value.

Was the trial court right in limiting plaintiff's damages to the first twenty days of October 1936? Appellant admits that the law required him to do what he reasonably could in the way of minimizing his damages; and this he claims to have done by endeavoring, though unsuccessfully, to secure another suitable location. He contends that the law did not require him to mitigate his damages by accepting defendant's written offer of October 19, 1936. In support of this position, he argues: (1) That defendant's failure to reinstall plaintiff's equipment and give him possession on October 1, 1936, constituted a constructive eviction, and had plaintiff accepted the offer of October 19, 1936, he would have waived the eviction entirely, leaving him only a cause of action for simple trespass with damages limited to the actual time he was deprived of the leased premises; (2) that it was plaintiff's legal right to consider the lease completely abrogated by defendant's act in refusing him possession at the time agreed, and to sue for eviction, his damages being the value of the remainder of the term; (3) that plaintiff could not be forced to enter contractual relations against his will, or to abandon his right of action for the eviction; (4) that it would not have been prudent for plaintiff to accept the offer of October 19, because he had been previously informed by defendant's attorney that he would be allowed to return to the premises only on condition that he remove

from the basement his refrigeration plant, which he had theretofore installed at an approximate cost of $1,200.

■ Defendant's failure to restore the leased premises on October 1, 1936, constituted a breach of contract to deliver possession, not a constructive eviction. Plaintiff, though entitled to be put in possession on October 1, was not in possession at that time and had not been since the middle of June when, without any fault or wrong doing on the part of defendant, he voluntarily and completely relinquished possession. Vanderpool v. Smith, 4 Abb. Ct. App. Dec. 461, 464; Dunn v. Di Nuovo, 3 M. & G. 105, 42 E. C. L. 63, 133 Reprint 1075; McAdam on Landlord and Tenant, vol. 2, sec. 328, p. 391; 36 C. J. 258, 259, n. 7; 11 Am. & Eng. Encyc. of Law 460; 62 A. L. R. 1309, 2d column, lines 7–13. In support of his contention that there was a constructive eviction in this case, and not merely a breach of contract for failure to deliver possession, appellant has cited three California cases: Morse v. Tochterman, 21 Cal. App. 726, 132 P. 1055; Coen v. Los Angeles, 70 Cal. App. 752, 234 P. 426; Tregoning v. Reynolds, 136 Cal. App. 154, 28 P. (2d) 79. An examination of these cases discloses that in each instance the party evicted, or claiming to have been evicted, was in possession immediately preceding and up to the time when the eviction, or alleged eviction, took place.

■ Plaintiff, had he accepted respondent's offer of October 19, 1936, would not have waived his right to damages suffered by him from October 1 to October 26. Huntington Easy Payment Co. v. Parsons, 62 W. Va. 26, 57 S. E. 253, 9 L. R. A. (N. S.) 1130, 125 Am. St. Rep. 954; Cleveland, C., C & St. L. Ry. Co. v. Joyce, 54 Ind. App. 658, 103 N. E. 354; 36 C. J. 53, note 33; 16 R. C. L. 726, note 3; Monographic Note, 134 Am. St. Rep. 922.

■ Defendant's failure to restore plaintiff to possession on October 1 was a breach of the agreement of June 11, justifying plaintiff, if he so elected, to consider the lease abrogated, and sue for damages; and such was

the holding of the trial court. In holding that by declining to accept defendant's offer of October 19 plaintiff's recovery of general damages was limited to the period from October 1 to October 20, the district court did not decide that plaintiff could be forced to enter contractual relations against his will or to abandon his right of action for damages. Plaintiff was at liberty, if he could, to find some other equally suitable location or to mitigate his damages in any other reasonable way.

■ As there was no change in conditions during the month of October, and no lessening in value of plaintiff's equipment, the premises would have been worth as much to plaintiff on October 26 as on October 1. Appellant admits that it was his duty to minimize his damages, but according to his own testimony, he was unable to find another suitable location. In view of the fact that respondent offered to restore appellant to possession under the precise conditions as those under which he had held the premises until June 15, 1936, and as appellant was unable to secure another suitable location, he was bound either to accept the premises on October 26, or have his damages limited to the period from October 1 to not later than October 20. Huntington Easy Payment Co. v. Parsons, supra; Hahn v. Mackay, 63 Or. 100, 126 P. 12, 991; Hodges v. Fries, 34 Fla. 63, 15 So. 682; 36 C. J. 59, n. 18; 8 R. C. L. 442, section 14; Annotation, 104 A. L. R. 166, 167.

■ Appellant strenuously urges that it is unreasonable to say he should have taken the premises back on October 26, because defendant's attorney had told him that, while he would be allowed to return to the premises, it would only be on condition that plaintiff remove his refrigeration plant from the basement. Plaintiff testified that defendant's attorney, Mr. Sinai, did so inform him, but this testimony was squarely denied by that of Mr. Sinai, and was not corroborated by any other testimony or evidence. The trial court made no finding with respect to this particular matter, and we do not find in

the record any objections to the findings or any proposed additions or modifications thereto. It is not claimed that defendant's offer of October 19, 1936, contained or was accompanied by any such condition, nor does it appear that before or at the time of refusing said offer plaintiff indicated his willingness to accept it, provided his refrigeration be allowed to remain in the premises. We do not say that plaintiff's testimony regarding this particular matter is untrue, nor that of Mr. Sinai denying it. It would not be proper for this court, under the circumstances, to make a finding on this issue, one way or the other. We cannot, therefore, consider as a reason for plaintiff's not accepting the premises on October 26, the alleged fact that defendant's attorney made the statement attributed to him by plaintiff.

■ Appellant suggests that, even on the assumption that the trial court was right in limiting his damages to a portion of the month of October 1936, the $10 per day allowance should have been for twenty-six, not twenty, days. Had defendant taken the premises back on October 26, he would have been entitled to damages for twenty-five days; but as he refused, on October 20, the offer made him on October 19, we think the district court was right in not allowing damages for more than twenty days. 16 R. C. L. 728, note 18; 36 C. J. 59, 60, note 19.

■ There was no basis for awarding special damages, because defendant, on October 19, offered to reinstall plaintiff's equipment by October 26, in the same condition it had been prior to June 15, and there was no evidence showing any deterioration in value of the equipment up to that time.

The judgment and order appealed from are affirmed.