245 P.2d 1032

**BARFIELD v. DAMON.**
No. 5492.

Supreme Court of New Mexico.
June 24, 1952.

Rehearing Denied July 29, 1952.

Lynell G. Skards, Clovis, for appellant.
Smith & Smith, Clovis, for appellee.

COMPTON, Justice.

This is an action for damages for breach of lease covenants. The complaint alleges that on December 21, 1949, appellant leased 2,300 acres of grazing land to appellee for a period of two years commencing January 1, 1950, and ending December 31, 1951, at an annual rental of $1,500 of which $750 was paid upon delivery of the lease, and that appellent failed to deliver possession on January 1, 1950, as provided thereby. Judgment for the return of the initial payment of $750 and damages of $15,000 for the loss of profits by reason of the breach, are prayed for. The answer denies all material allegations and affirmatively pleads delivery of legal possession. Waiver and estoppel are also pleaded as a defense. A trial to a jury resulted in a verdict for appellee, from which appellant prosecutes this appeal.

It is agreed that on January 1, 1950, the date the lease began, B. R. Christmas, a former tenant, was in possession of the ranch and that he refused to vacate it. Appellant contends, however, that under the terms of the lease he was required only to give appellee the right of possession and that it was the duty of appellee to enforce such right. Conversely, appellee contends that covenants of entry and quiet possession were implied and that it became the duty of the landlord to put the tenant in actual possession at the commencement of the term.

Section (1) of the lease provides "that first party *leases* and *lets* to second party the following described premises located in Roosevelt County, New Mexico, to-wit: (here follows description of land) for a term of two (2) years, *to have* and *to hold,* from the 1st day of January, 1950, to the 31st day of December, 1951." (Emphasis ours)

The disputed question is whether the lessor was required to deliver actual possession or the mere right of possession.

At 51 C.J.S., Landlord and Tenant, § 310, relating to the landlord's duty, we find the following rule:

"* * * where there is a contract of lease and no stipulations to the contrary, there is an implied covenant on the part of the lessor that, when the time comes for the lessee to take possession under the lease, according to the terms of the contract, the premises shall be open to his entry or, in other words, that there shall then be no impediment to his taking possession. The landlord, however, is not liable where the lessee is prevented from enjoying

the premises by the act of a stranger over whom the lessor has no control. Under this rule, the tenant is under no obligation to maintain an action against one in possession in order to secure such possession for himself; it is the landlord's duty to require a tenant in possession to vacate the premises when the new lessee's right of possession accrues. Occupancy of demised premises by a former lessee holding over is a breach of an implied covenant to put another lessee in possession under a lease to commence in futuro, although the landlord made every effort to deliver the premises, and although the tenant knew that the old tenant intended to hold."

While the courts are divided we are in accord with the rule announced. We think it was the duty of the landlord to put the tenant in actual possession when right of possession accrued. The arguments presented in favor of this conclusion impress us as being more in accord with reason and justice. The weight of authority, at least the better reasoning, lies with the cases supporting the rule. This is the conclusion of such eminent authorities as Tiffany, Trickett, Taylor, and McAdams. We quote from the texts as follows:

"A formal instrument of lease ordinarily contains an express covenant on the part of the lessor for quiet enjoyment by the lessee, but, according to the weight of authority, even though such a covenant is not expressed, it will be implied." 1 Tiffany, Landlord and Tenant, Section 79.

"The making of a contract to let land, or the making of a lease for the land, from a certain date, binds the lessor to make the lease and deliver the possession. * * *" Trickett, Landlord and Tenant, Section 4.

"* * * The law supposes that when a man makes a lease, he has a good title to the land, and consequently power to lease it; and an engagement to this effect on the part of a lessor is therefore always implied." 1 Taylor, Landlord and Tenant (9th Ed.) Section 304.

"It is now the established rule that in every lease or demise of land, a covenant for quiet enjoyment is implied." 1 McAdam, Landlord and Tenant (4th Ed.) Section 118.

Numerous authorities support the texts. Coe v. Clay, 5 Bing. 440, 130 Eng.Reprint 1131; Carroll v. Peake, 1 Pet. 18, 26 U.S. 18, 7 L.Ed. 34; Herpolsheimer v. Christopher, 76 Neb. 352, 107 N.W. 382, 111 N.W. 359, 9 L.R.A.,N.S., 1127; King v. Reynolds, 67 Ala. 229, 42 Am.Rep. 107; Obermeier v. Mortgage Co. Holland-America, 111 Or. 14, 224 P. 1089; Shelton v. Clinard, 187 N.C. 664, 122 S.E. 477; Miller v. Ready, 59 Ind.App. 195, 108 N.E. 605; Morrison v.

Weinstein, 151 Ark. 255, 236 S.W. 585; Gregory v. Pribbeno, 143 Neb. 379, 9 N. W.2d 485. The courts of Arizona, California, Kansas, Connecticut, Michigan, Ohio, Texas, and Wisconsin also follow the rule.

The facts in the case of Stewart v. Murphy, 95 Kan. 421, 148 P. 609, are so similar to those under consideration we quote with approval therefrom:

"It is urged that there is no warranty in the lease of the quiet enjoyment of the premises. This is correct, unless one is implied. The lease recites that the party of the first part has this day leased and rented unto the party of the second part, for the term of one year, commencing on the 1st day of March, 1913, etc. To enjoy the benefits secured by this contract, the lessee—the plaintiff in this action—must be in possession of the premises. If he cannot have such possession, the provisions of the contract are defeated so far as he is concerned. In a sale of personal property, there is an implied warranty or covenant on the part of the seller that he is the owner of the property, and has the right to sell the same. Unless there is an implied covenant for quiet enjoyment of the premises, a landowner may lease property to different persons for the same period, and not be liable because of failure to deliver possession under the leases. It is true that when parties enter into a written contract, that contract is presumed to contain all the terms of their agreement, but many times conditions are implied by law on which the contract itself is silent. It would be a harsh rule that would permit a landowner to lease land to a person, and then, without fault on the part of the lessee, prevent him from going upon or possessing the premises. The authorities are not united in holding that a covenant of quiet enjoyment is implied in a lease. In a note in 9 L.R.A. (N.S.) 1127, it is stated that the authorities upon this point are in direct conflict, and cases are there cited on both sides of the controversy. The weight of authority, however, is that in every lease of land, a covenant of quiet enjoyment is implied, when the lease is silent on that subject.

"'The lessor impliedly covenants to put the lessee in possession at the beginning of the term as against a prior tenant wrongfully holding over.'" (Citing cases.)

It is next contended that the evidence fails to show an eviction. There is no merit to the contention. In order to constitute an eviction it is not necessary that there should be an actual physical expulsion. Turning to the facts, it appears that on or about the 5th day of January, 1950, appellee went to the premises to as-

certain if there were sufficient water for the cattle before placing them on the ranch. It was there he met Christmas for the first time. He was then informed by Christmas that he had a five year lease upon the premises and expected to retain it. Christmas told him to leave the ranch and not molest his cattle. On the same day he talked with appellant and related to him what Christmas had said. Appellant, nevertheless, told appellee to bring his cattle to the ranch and that he would see that the Christmas cattle were put off and kept off the ranch. On or about the 7th of January, appellee moved 69 cows, two bulls, and 60 calves to the ranch. Shortly thereafter, additional cattle, consisting of 31 cows and 31 calves were brought to the ranch by appellant. When appellant saw that the Christmas cattle were still on the ranch he placed his cattle in feed pens on the ranch and constructed a small pasture where they could be cared for properly until possession was delivered. Appellant insisted that Christmas was a trespasser and assured appellee from time to time that he would evict him and deliver the ranch, but he failed to do so. In a suit by appellant against Christmas to repossess the premises, the court held that Christmas was a tenant from year to year and his lease was terminated as of September 1, 1950, the expiration of his tenancy.

The author, at 21 C.J.S., Covenants, § 108, says:

"(b) * * * According to some cases, especially earlier ones, actual eviction is necessary, but, according to the rule now quite generally recognized, even in various jurisdictions in which formerly actual eviction was regarded as, or said to be, necessary, any actual disturbance of the possession equivalent to an eviction by one having the required lawful and paramount title is a breach of the covenant; * * *."

At 3 Thompson, On Real Property, (Perm.Ed.), Section 1296, the rule is stated thusly:

"If a tenant is evicted from a material part of the premises, he has a legal right to abandon the whole. It is implied that the tenant shall have free use of the whole premises; but, if he is ousted from any material part of them, he may treat it as an eviction and rescind the lease. * * *"

To the same effect, Brown v. International Land Co., 29 Okl. 341, 116 P. 799; McAlester v. Landers, 70 Cal. 79, 11 P. 505; Keating v. Springer, 146 Ill. 481, 34 N.E. 805, 22 L.R.A. 544; Econopouly v. Hamerman, Mun.Ct., 185 N.Y.S. 291.

In McAlester v. Landers, supra, 70 Cal. 79, 11 P. 507, the court said:

"As to the covenant for quiet enjoyment, the rule is that there can be no breach without an eviction, actual or

constructive. But what acts will constitute such an eviction it is often difficult to determine. It is settled, however, that there need not be an actual dispossession."

In Econopouly v. Hamerman, supra, it was held:

"Where a tenant takes possession of part of the premises on the landlord's promise that the balance would be delivered to him later, and the landlord fails to deliver, there is an eviction."

Appellant seeks to invoke the doctrine of waiver and estoppel, and the refusal of the court to give the following instructions requested by him, is charged as error. The tendered instructions read:

"(5.) You are further instructed that if you find that Mr. Barfield entered upon the Damon ranch knowing or being aware of facts where he should have known that a third person alleged a right to possession of said premises, and Mr. Barfield continued to occupy all or a portion of said ranch for a reasonable time thereafter, then you may conclude that Mr. Barfield thereby waived his rights to rely upon an implied covenant of quiet possession, and if you so conclude, you should render a verdict in favor of the defendant.

"(6.) You are further instructed that if you find that plaintiff, Mr. Barfield, knew or had facts brought to his attention by Mr. Damon where he should have known that there was a controversy as to whether the Damon ranch was leased to a third person and that person in possession, whether rightfully or wrongfully, then Mr. Barfield is estopped from asserting that Mr. Damon impliedly covenanted quiet possession of the ranch in him, and you should return a verdict in favor of the defendant."

It is claimed that appellee waived the right to full possession by accepting a portion of the premises, such as feeding pens, corrals, etc., and that he is now estopped from demanding full possession. In this respect, appellant continuously, and as late as March 28, 1950, assured appellee that full possession was forthcoming, however, as previously stated, possession was never delivered. Meanwhile, appellee kept his cattle in feed pens or a small pasture or trap, resulting in heavy expense. On the latter date when it became obvious that possession could not be delivered, in order to minimize his damages, he declared a forfeiture of the lease, so advised appellant and moved his cattle. Such conduct cannot be regarded as waiver of right of full possession. See, Douglass v. Guardian Holding Corporation, 132 Cal.App. 585, 23 P.2d 80; Matyasovich v. Petricciani, 60 Nev. 366, 110 P.2d 206. Moreover, waiver and estoppel cannot be relied on. It was im-

material whether appellee had notice of the claims of prior tenant or that he may have used a portion of the premises after having learned of such adverse claims. Under the terms of the lease, appellant was required to put appellee in actual possession at the time specified.

In a somewhat similar case, Morrison **v.** Weinstein, supra, the court disposed of **a** like contention as follows:

"Appellant executed a written lease for her building at 712 Garrison avenue to appellee for the term of four years, beginning the 1st day of January, 1920, for $280 per month. The lease did not contain an express covenant for possession of the property. The property at 712 Garrison avenue was occupied by the Apple Hat Company and the Southern Millinery Company. These tenants asserted the right to occupy the building for the year 1920, and advised both appellant and appellee before they entered into the lease contract, of date December 5, 1919, that they were going to keep the building, and would not remove therefrom on the 1st day of January, 1920, or at any time during the year. * * *

"Appellant's first insistence for reversal is that she is not liable for damages because she made every effort to put appellee in possession of the property, and that he was prevented from taking possession by her old tenants who wrongfully retained possession of the property after their lease expired. This court ruled, in the case of Rose v. Wynn, 42 Ark. 257, which ruling was confirmed in the later case of Thomas v. Croom, 102 Ark. 108, 143 S.W. 88, that a lessor who was unavoidably prevented from delivering possession of leased property was liable for damages resulting from the breach of the covenant, express or implied, for possession. Appellant attempts to differentiate these cases from the instant case, because in those cases the lessees had no knowledge at the time the leases were executed that the old tenants would attempt to hold over, whereas in the instant case appellee had such knowledge. We think this can make no difference. A lessor's liability grows out of the fact that he entered into a binding covenant or contract to give possession * * *."

Another objection concerns the measure of damages. Appellant strongly argues that anticipated profits are speculative and too remote. In this respect the following instruction, given by the court, is assigned as error:

"6. If the profits to be made by plaintiff on the ranch covered by the lease agreement were within the contemplation of the parties when the lease agreement was made, and if their

loss is the natural and proximate result of defendant's breach of the agreement, and the amount thereof is ascertainable with the reasonable certainty, then the loss of profits by plaintiff by his failure to obtain possession of the ranch is recoverable, then the amount thereof should be fixed and allowed as damages by you."

Ordinarily, for breach of covenant, the tenant is entitled to the difference between the actual value of the unexpired term and the agreed rental, and where there are no other elements of damages, if the value of the term is no greater than the value of the rent reserved, nominal damages only may be recovered. See, 32 Am. Jur., Landlord and Tenant, Section 285. But special damages which are within the contemplation of the parties and resulting directly and proximately from the breach, are recoverable if they can be established with reasonable certainty. The parties are shown to be experienced in the cattle business. They knew range conditions, carrying capacity, and the purpose for which the premises were to be used. With this knowledge it would seem that the question of profit was clearly within the contemplation of the parties when the lease was made. 3 Thompson, On Real Property, Section 1300, says:

"* * * It may be assumed in judicial proceedings that the results of profits, if they are reasonable, definite, and certain, arising from the use of real estate, afford a proper basis for fixing a rental value. Where a lessee for a crop rent brought an action against his lessor for failure to let him into possession, evidence of the average yield, of the cost of production and putting on the market, together with the market value of the crops, was held competent to show the measure of damages. * * *"

Section 1302, op. cit., says:

"* * * Special damages may be recovered for loss of profits where such loss is a natural and proximate result of the breach and is within the contemplation of the parties, the lessor having knowledge at the time the lease is executed that a loss of large profits would result from its breach, and the anticipated profits can be shown with reasonable certainty and are not too remote or speculative. * * *"

Cf. Smith v. Hicks, 14 N.M. 560, 98 P. 138, 19 L.R.A.,N.S., 938; C. W. Kettering Mercantile Company v. Sheppard, 19 N.M. 330, 142 P. 1128; Price v. Van Lint, 46 N.M. 58, 120 P.2d 611; J. R. Watkins Co. v. Eaker, 56 N.M. 385, 244 P.2d 540.

During appellee's direct examination, the record discloses the following:

"Q. What was the profit that you could have reasonably made during the year 1950 on the cattle that you took

to the ranch or that you bought and that you bought to take to the ranch?

"Mr. Skarda: May it please the Court, we object to the form of that question, calls for a conclusion of the witness. Let him set down the cost of his animals, the cost of his hired help, the cost of his transportation and let the jury calculate the profit, if any.

"The Court: Overruled.

"Mr. Skarda: Calls for a conclusion of the witness.

"The Court: Overruled.

"Mr. Skarda: Exception.

"Mr. Smith: Answer the question.

"A. Well, I'd think it would run anywhere from fifteen to eighteen thousand dollars profit. * * * "

Standing alone the testimony obviously is objectionable but appellant was not satisfied to let the record rest. On cross-examination he· went into detail and fully developed facts from which the jury could readily determine for itself the loss of profits sustained as a natural and proximate result of the breach. Appellee testified that he had been in the cattle business all his life, ranching in West Texas and New Mexico; that he had about 195 head of cattle on the ranch when he was evicted. He further testified that appellant had told him at the time he was dealing for the ranch that it would carry 200 head of cows and calves, or 400 yearlings. He detailed the kind and cost of his cattle, the expenses of production, market conditions, and other data from which he estimated his loss. Having established these essential facts, appellant is in no position to complain.

The former tenant, Christmas, an adjacent land owner, testified that he knew appellee's cattle, range conditions, the cost of production, the market, etc., and he estimated appellee's loss at $10,000. The witness, Clyde Rayl, likewise engaged in the live stock business, after detailing similar data upon which he based his opinion, estimated appellee's loss from $12,000 to $16,000. We find no fault with the measure of damages.

The final contention is that the court committed error in permitting appellee's counsel, over objection, to argue to the jury the law respecting the tenancy of Christmas, the former tenant. Of course, it is the prerogative of the court to instruct the jury and the parties may not instruct the jury through arguments of counsel on a subject which should be covered by an instruction of the court. But the tenancy of Christmas was not a proper subject to be covered by the court's instruction. His tenancy was not an issue. It made no difference whether Christmas was rightfully in possession, a holdover, tenant from year to year, or a mere trespasser. Under the doctrine announced it was appellant's duty to deliver possession at the time specified in the lease regardless of the Christmas

claims. Consequently, appellant was not prejudiced by the argument of counsel.

The judgment will be affirmed and the cause remanded to the trial court to reinstate the case upon its docket and enter judgment against appellant and the sureties upon his supersedeas bond and it is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COORS, JJ., concur.