645 P.2d 442
**EL PASO NATURAL GAS
COMPANY, Petitioner,**

v.

**KYSAR INSURANCE AGENCY, INC.
and Raymond Kysar, Jr.,
Respondents.**

No. 13853.

Supreme Court of New Mexico.

April 6, 1982.

Rehearing Denied May 13, 1982.

See also 93 N.M. 732, 605 P.2d 240.

Montgomery & Andrews, Damon L. Weems, Farmington, John B. Pound, Santa Fe, for petitioner.

Modrall, Sperling, Roehl, Harris & Sisk, John R. Cooney, Albuquerque, for respondents.

## OPINION

RIORDAN, Justice.

El Paso Natural Gas Company (El Paso) sued Kysar Insurance Agency, Inc. (Kysar), and its President and sole owner, Raymond Kysar, Jr., to rescind a lease alleging fraud or constructive fraud, and breach of contract. Kysar counterclaimed for breach of covenant of quiet enjoyment. The trial court entered judgment dismissing El Paso's complaint with prejudice and granting Kysar's counterclaim in the amount of $21,938.00 plus costs. El Paso appealed. Kysar cross-appealed on the trial court's denial of an award of attorney fees. The Court of Appeals affirmed the trial court except for the issue of Kysar's attorney fees, on which it reversed the trial court.

We granted certiorari to consider the issues of constructive eviction and attorney fees. We reverse the Court of Appeals on these issues.

In December 1969, El Paso entered into a lease agreement with Western Building Associates (Western) through its agent and part owner, Raymond Kysar. The lease included a purchase option to buy the Pe-

troleum Plaza Building in Farmington, New Mexico exercisable during the first four months of 1975. When El Paso exercised its purchase option, Western refused to make the conveyance. El Paso then filed suit in federal court and was granted specific performance. On July 1, 1977, pursuant to the federal court order, Western transferred legal title to El Paso subject to "the rights and claims of tenants and lessees."

One of the tenants of the Petroleum Plaza Building at the time El Paso acquired title was Kysar Insurance. On May 1, 1972, Kysar had entered into a written two-year lease with Western to rent 1,953 square feet of the building's ground floor for $200.00 per month. The lease included an option to renew for two additional five-year terms at the same rental rate. This rate was considerably less than the market value and what the other tenants were paying. Mr. Kysar testified that Kysar received a more favorable rental rate because he managed the Petroleum Plaza Building and because he completed the construction of the office space that Kysar was occupying.

On July 1, 1977, El Paso took over ownership and management of the Building. On July 29, 1977, El Paso sent Kysar notice that it was requiring Kysar to pay an increased rental rate, claiming that the original rental agreement was based upon an oral contract for management services which El Paso no longer desired Kysar to provide. Kysar refused to acknowledge the increase in rent and insisted that its monthly rental rate should continue to be $200.00 per month notwithstanding the fact that Mr. Kysar no longer provided managerial services. Kysar claimed the original written lease included no provisions for managerial services, and that in purchasing the building, El Paso was bound by the lease and could not alter its express terms.

*Constructive Eviction*

The trial court ruled that El Paso breached the covenant of quiet enjoyment in its lease with Kysar. It awarded Kysar $21,938.00 in damages. This represented rent Kysar would have received had El Paso not pursued its legal actions against Kysar which Kysar alleged interfered with its ability to sublet. The district court determined that El Paso's acts in seeking to increase the rent, in declaring the lease terminated, and in seeking a judicial termination of the lease were done maliciously and in bad faith, and constituted a constructive eviction. We disagree.

■ The record lacks substantial evidence to support the trial court's conclusion that El Paso acted with malice or bad faith. In order to state a cause of action for interference with the covenant of quiet enjoyment, a tenant must show that he had been actually or constructively evicted. *Barfield v. Damon,* 56 N.M. 515, 245 P.2d 1032 (1952); *Kennedy v. Nelson,* 76 N.M. 299, 414 P.2d 518 (1866); *El Paso Natural Gas Co. v. Kysar Ins. Agency,* 93 N.M. 732, 605 P.2d 240 (Ct.App.1979), (*El Paso I*).

Kysar was never actually evicted from the Petroleum Plaza Building. It had exclusive use of the premises, and never vacated the premises, from the time of the initial lease in 1972 until August 1, 1980 when Kysar negotiated a sublease.

■ The general rule is that one claiming constructive eviction must vacate the premises within a reasonable time after the commission of the acts which deprive the tenant of beneficial use of the premises. *Kennedy v. Nelson, supra.* In *Kennedy* we stated the exception to this general rule. A delay in vacating may be justified if the claimant shows either: 1) a "reliance on promises by the landlord to correct [a] deficiency" or; 2) a "reoccurrence of [adverse] conditions." *Id.* at 303, 414 P.2d 518, 521. Kysar makes no claim of reliance on any promise made by El Paso that induced Kysar to continue its occupancy, nor is there any evidence of such. The only other theory by which Kysar's failure to vacate the premises may be justified is a "reoccurrence of adverse conditions" caused by El Paso.

In *El Paso I, supra,* the Court of Appeals discussed how the second exception of the *Kennedy* test applies to this case.

The issue before this court is to determine whether the [second] of the two exceptions announced in *Kennedy, supra*, (reoccurrence of interferences by the landlord) has occurred so as to find constructive eviction. When a landlord repeatedly acts with *malice* and in *bad faith in his attempts to oust a tenant in rightful possession*, there is constructive eviction even without actual vacation of the premises by the tenant, as the landlord had breached the covenant of quiet enjoyment.

In *Kuiken v. Garrett*, 243 Iowa 785, 51 N.W.2d 149 (1952), Iowa's Supreme Court found the issue of constructive eviction to turn on whether there was malice and bad faith by the landlord. The Iowa court then discussed its function in relation to this test:

It is true that a landlord has a right to attempt to oust his tenant, *if he thinks he has just grounds therefor; and in such case he is not to be held liable for damages if he fails * * *.* If he serves repeated notices, and institutes repeated actions, alleging different grounds, and fails to prove any of them upon trial, we think a fair inference of malice may be drawn by a jury. [Emphasis added.]

*Id.* at 737, 605 P.2d 240, 245.

The central question, then, is whether El Paso believed it had a meritorious claim when it sent the demand letters and filed suit. Kysar failed to prove that El Paso did not believe it had a just claim. The record shows that the actions taken by El Paso were no different than those one would reasonably expect a landlord to take in the event of a good faith rental dispute with a tenant.

In *Kuiken v. Garrett, supra*, the court found constructive eviction based on repeated acts of malice and bad faith. In that case the landlord served the tenant with ten separate notices and filed four petitions in forcible entry and detainer. Each petition was dismissed or decided in the tenant's favor. The landlord intimidated his tenants to such a degree that their peaceful enjoyment of the premises was interrupted. The landlord's actions were clearly meritless and designed to harass.

■ By contrast, El Paso stops far short of falling within the ambit of malice and bad faith. El Paso sent Kysar three demand letters, a monthly computerized statement, and filed suit. In fact, El Paso indicated that it hoped the letters would lead to a resolution of the dispute without the need for litigation. In addition, demand letters alone, like those sent by El Paso, cannot act to constructively evict a tenant. *Lake Charles Diesel, Inc. v. Guthridge*, 326 So.2d 613 (La.Ct.App.1976).

We therefore find that there is not substantial evidence of repeated acts of malice or bad faith to conclude that Kysar was constructively evicted and entitled to damages for breach of covenant of quiet enjoyment. We reverse the Court of Appeals.

*Attorney Fees*

Since we have ruled that the trial court erred in awarding damages for breach of quiet enjoyment, Kysar is not entitled to attorney fees based on that counterclaim.

We remand this case to the trial court for whatever further proceedings are appropriate and not inconsistent with this opinion.

EASLEY, C. J., and JAMES E. SCARBOROUGH, District Judge, concur.

SOSA, Senior Justice, and LORENZO F. GARCIA, District Judge, dissenting.

PAYNE and FEDERICI, JJ., not participating.

SOSA, Senior Justice, and LORENZO F. GARCIA, District Judge, dissenting.

The majority holds that the district court erred in its determination that El Paso's acts in seeking to increase the rent, declaring the lease terminated, and in seeking a judicial termination of the lease were done maliciously and in bad faith, and, therefore, constituted constructive eviction. From this determination, we respectfully dissent.

A trial court is called upon to exercise sound judgment in resolving factual dis-

putes presented by the parties. In making those determinations, the court looks at all of the evidence presented and the reasonableness of the testimony of each witness in light of all the evidence. The factfinder must determine the weight and the credit to be given to each witness' testimony. Judgment calls are made as to the witness' manner while testifying, his demeanor, and any interest, bias or prejudice he may have. The trier of fact, not the appellate court, must resolve conflicts in the testimony of witnesses. *Grisham v. Nelms*, 71 N.M. 37, 376 P.2d 1 (1962). On appeal, the court should not substitute its judgment for that of the trier of fact. The issue is not what decision would have been rendered had this Court heard the evidence, but whether there is substantial evidence to support the findings of the trial court. *Tapia v. Panhandle Steel Erectors Company*, 78 N.M. 86, 428 P.2d 625 (1967); *Sauter v. St. Michael's College*, 70 N.M. 380, 374 P.2d 134 (1962).

"Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and if there is such evidence in the record to support a finding, it will not be disturbed. [Citation omitted.] Moreover, in examining such evidence an appellate court will view the evidence in a light most favorable to the prevailing party below and will not disturb findings, weigh evidence, resolve conflicts, or substitute its judgment as to the credibility of witnesses where evidence substantially supports the findings of the trial court. [Citation omitted.]

*Den-Gar Enterprises v. Romero*, 94 N.M. 425, 429, 611 P.2d 1119, 1123 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980).

To sustain a cause of action for interference with a covenant of quiet enjoyment, a tenant must show that he has been actually or constructively evicted. *Barfield v. Damon*, 56 N.M. 515, 245 P.2d 1032 (1952); *El Paso Natural Gas Co. v. Kysar Ins. Agcy., Inc.*, 93 N.M. 732, 605 P.2d 240 (Ct.App. 1979) (*El Paso I*); *see Kennedy v. Nelson*, 76 N.M. 299, 414 P.2d 518 (1966). There is no dispute that Kysar was not actually evicted from the Petroleum Plaza Building

and, accordingly, before El Paso can maintain its cause of action, it must show that it falls under an exception to the general rule, as discussed by the majority opinion. There is no claim that El Paso comes under the first exception; therefore, their case must fall under the second exception. In *El Paso I, supra*, the appellate court discussed how the second exception applies. An action for constructive eviction can be maintained without actual vacation of the premises where the landlord repeatedly acts with malice and in bad faith in his attempts to oust a tenant in rightful possession. In *Kuiken v. Garrett*, 243 Iowa 785, 51 N.W.2d 149 (1952), Iowa's Supreme Court found the issue of constructive eviction to turn on whether there was malice and bad faith by the landlord. The Court stated that "[i]f [the landlord] serves repeated notices, and institutes repeated actions, alleging different grounds, and fails to prove any of them upon trial, we think a fair inference of malice may be drawn by a jury." *Id.* 51 N.W.2d at 157.

After discussing the application of this second exception, the majority then reviews the evidence and draws distinctions between the evidence presented in *Kuiken, supra*, and the evidence presented here. In *Kuiken*, the Court did find constructive eviction based upon repeated acts of malice and bad faith. In that case, ten separate notices were submitted by the landlord to the tenant and four petitions were filed in court. The petitions were dismissed or decided in the tenant's favor. In this case, the majority distinguishes the kinds of notices sent and minimizes the effect of such notices on Kysar.

It is undisputed that a written lease agreement existed between the parties setting out a sum certain for monthly rent. On July 29, 1977, the Senior Vice-President for El Paso Natural Gas Company wrote to Raymond L. Kysar and advised him that the net effect of the lease agreement was that Kysar was paying only $0.77 per square foot of space per year, and that such a figure was substantially lower than the rent being paid by any other tenant in the

building. El Paso Natural Gas Company advised Raymond Kysar that:

> Your testimony at the trial was to the effect that the difference in rental value was made up by your management of the building and your recoupment of costs incurred in redecorating your office. Inasmuch as you are no longer managing the building and will shortly be removing the non-permanent improvements from your space, we must insist upon increasing the rental you are paying to a commercially reasonable level. We will be charging a rate of $6.00 per square foot per year, making the rental charge for your space $1,561.00 per month. This new rental rate will be effective August 1, 1977.

The effect of this letter is to make a demand on Kysar to increase rental premiums by some $1,361.00 per month.

On August 2, 1977, Kysar responded to El Paso's July 29, 1977, letter and explained that they were tenants under a lease agreement dated May 1, 1972, which called for $200.00 per month rent. Kysar indicated that, pursuant to such a lease, it had an option to renew for two successive five-year terms and that the first renewal was exercised on September 3, 1974. Under the terms of the renewal lease, Kysar was to continue to be a tenant at the rate of $200.00 per month. Kysar advised that the lease was not subject to unilateral modification for amendment and tendered $200.00 rent.

By letter of August 11, 1977, the Senior Vice-President for El Paso Natural Gas rejected Kysar's tender of monthly rent and indicated that the past rental rate was commercially unreasonable and had been increased. El Paso directed the sum of $967.50 as monthly rental. Commencing in August of 1977, and each month thereafter, El Paso submitted statements to Kysar Insurance demanding rental payments. The statements covered the period of August 1977 to October 1979, for a period of 27 months.

On September 20, 1979, Kysar gave written notice of the exercise of its option to extend the lease for an additional five-year term. The receipt of the letter prompted a response by El Paso's Vice-President to the effect that there existed no lease, and therefore Kysar was unable to exercise any option. By this time, litigation was in progress.

The trial court further found that, coincidental with El Paso's July 1977 letter, some of the janitorial services which were previously performed were halted.

The majority distinguishes the kinds of activities occurring in this case from those that occurred in *Kuiken*. We are unable to draw the same distinction. In this case, while only three demands were sent, El Paso's monthly statements served as a constant reminder of their position that rent was not being paid in accordance with El Paso's determination of what was a commercially reasonable rent. This Court's determination that the actions in the case at bar fall short of malice and bad faith constitutes a substitution of its judgment for that of the trier of fact. For example, if El Paso's actions do not constitute an inference of bad faith, how many notices, monthly computer statements and lawsuits are sufficient to infer malice or bad faith? This Court would be put in the position of saying three notices are insufficient, but four or five might be sufficient. It would appear that such a determination becomes one of degree best made by the trier of fact.

We determine that there is substantial evidence to support the trial court's findings, and accordingly would affirm the trial court and Court of Appeals on this issue.

The trial court refused to award attorney's fees as a recoverable item of damage, and relied on *Lujan v. Merhage*, 86 N.M. 26, 519 P.2d 122 (1974). I would reject the Court of Appeals' resolution of this issue and would adopt the dissenting opinion as it relates to the denial of attorney's fees, finding that our decision in *Lujan v. Merhage*, *supra*, is controlling, and reconsideration of this issue, if any, is reserved to this Court.