744 P.2d 906

**Eva DENNISON, Plaintiff-Appellee,**

v.

**Steve MARLOWE and Patty Marlowe, his wife, d/b/a Great American Saloon, Defendants-Appellants.**

**No. 16720.**

Supreme Court of New Mexico.

Oct. 26, 1987.

Hall & Hill, Roy G. Hill, Deming, for appellants.

Ralph E. Ellinwood, John F. Schaber, Deming, for appellee.

### OPINION

SOSA, Senior Justice.

Eva Dennison (lessor) filed a complaint for forcible entry and unlawful detainer of real property against Steve and Patty Marlowe (lessees), husband and wife. Lessor prayed for restoration of the premises and damages for unpaid rental. Lessees filed a counterclaim seeking, inter alia, to have lessor remedy certain safety code violations in the leased building, damages for remodeling and alterations, for depreciated value of fixtures and equipment, and for lost income. The trial court dismissed lessees' counterclaim and entered judgment in lessor's favor for $13,600, plus $1000 for at-

torney's fees. Lessees appeal. We reverse and remand.

## FACTS

On June 23, 1983, lessees leased a two-story building and a parking area from lessor for a term of five years at a rental of $800 per month. The building is known as the "Great American Saloon." The lease agreement had an option to renew for an additional five years and an option to purchase. About one year later, on May 14, 1984, lessees received a letter and cease and desist order from the State Fire Marshal, advising them that the building was in violation of the New Mexico State Rules and Regulations Relating to Fire Prevention and Life Safety in Public Occupancies (safety code). Attached to the letter was a report from Fire Prevention Specialist Bill Beutler who found various safety code violations, including the absence of an automatic sprinkler system. The sprinkler system was required because the entire interior of the building was of wood construction. Lessees appealed the cease and desist order, maintaining that they were not the owners of the building and had not changed the use of the premises. The building had been operated as a restaurant/bar for several years. Lessees also advised lessor of the order and requested that she comply with the safety code requirements. At lessor's request, lessees obtained bids for the installation of the sprinkler system and fire escapes. Anticipating that lessor would pay for the cost of the installation, lessees made some additional repairs and alterations towards compliance with the safety code at a cost of approximately $2200.

On September 7, 1984, a hearing was held before the State Fire Board on lessees' appeal. Lessor, as owner of the building, was included as a party defendant to the order. The Board gave the parties thirty additional days to install the sprinkler system, but ordered that the second floor of the premises be closed if the system was not installed by October. Lessor was advised of the thirty-day extension. She, however, informed lessees that if they wanted to use the second floor, they would have to pay for the installation of the sprinkler system. The improvements were not made and the second floor was closed. By closing this portion of the building the seating capacity dropped from 255 persons to about 118 persons.

In October lessees began paying $320 per month for rental of the first floor. They continued paying this amount until July 1985. From August 1985 through the date of trial on June 16, 1986, lessees paid no rent, but continued to use the first floor of the premises.

On August 14, 1986, the trial court entered judgment in favor of lessor for the entire past due rent commencing from October 1984 through June 1986, totaling $13,600. The court further ordered that the lease agreement be terminated and that the premises be returned to the lessor without removal of any alterations or improvements. Because lessees failed to deliver the premises by September 12, 1986, the trial court issued a writ of restitution. This appeal followed.

On appeal lessees raise several points of error, but we will not set them out in detail. They collectively raise the question of whether under the terms of the contract the lessees, and not the lessor, were liable for the expense of installing the sprinkler system ordered by the public authority. Courts in other jurisdictions have considered who as between landlord and tenant must bear the expense of making alterations, improvements, or repairs ordered by public authorities. This issue is one of first impression in New Mexico.

An overwhelming number of jurisdictions have held that when a tenant has agreed to comply with the laws and regulations of governmental authorities and the alterations or improvements ordered by the public authority are of a structural or substantial nature, the landlord instead of the tenant is liable for such alterations unless the terms of the covenant and the surrounding circumstances indicate the tenant's intention to assume such an obligation. *See, e.g., Zeibig v. Pfeiffer Chemical Co.,* 150 Mo.App. 482, 131 S.W. 131 (1910); *Puget Inv. Co. v. Wenck,* 36 Wash.2d 817, 221

P.2d 459 (1950). This rule is followed because the property owner is initially under the duty to comply with all laws and orders unless it is assumed by the lessee under the terms of the lease. 1 A.J. Casner, *American Law of Property* § 3.80, at 353–55 (1952). Thus, the intention of the parties as expressed in the lease agreement in light of the surrounding circumstances is determinative.

The lease contains the following pertinent provisions:

5. It is agreed that in the event any repairs, alterations or improvements be added to the premises or the existing improvements, the same shall become part of the realty and at the expiration of this lease, the improvements shall remain as part of the real property.

6. Lessor agrees to maintain the roof, plumbing and exterior of the demised premises in good repair and condition at [her] sole cost and expense * * *.

7. Lessee[s] [agree] to purchase, at their own expense, liability insurance to protect against the risk of loss, damage to, employees and/or business invitees or users of said building and structure....

9. (c) Lessees agree that they will abide by all of the laws, ordinances, rules or regulations of any regulatory body of the State of New Mexico or any political subdivision thereof * * *.

22. The Lessee[s] [acknowledge] that they have examined the premises and are accepting said premises in its present condition on an 'as is' basis, and [are] not relying on any representations made to the condition of the premises, but [are] relying solely on their own inspection of the premises and any improvements located thereon.

Although lessees agreed to comply with all "laws, ordinances, rules or regulations," this covenant, by itself, does not constitute an assumption of the duty to comply with orders requiring improvements of a substantial or structural nature. *Glenn R. Sewell Sheet Metal, Inc. v. Loverde*, 70 Cal.2d 666, 674, 75 Cal.Rptr. 889, 894, 451 P.2d 721, 726 (1969). The trial court, however, relying solely on *Sewell*, concluded

that under these circumstances the "[lessees'] covenant to comply [with the applicable laws] included the obligation to either take the required corrective steps or cease using a portion of the premises." The trial court reached this conclusion because the lessees had not only covenanted to comply with the applicable laws, but had also accepted the premises "on an 'as is' basis" and further had assumed all risk of loss by reason of damage to employees and/or business invitees. The trial court further concluded that the "[lessees] assumed the risk that noncompliance might interfere with the use of the premises or render it less profitable" and that "[a]ny alleged loss of earnings due to closing of the second floor of the premises was not as a result of [lessor's] actions (or non-action)."

This Court is not bound by the trial court's conclusions of law. *Martinez v. Martinez*, 93 N.M. 673, 676, 604 P.2d 366, 369 (1979). We have examined the terms of this lease agreement and, in light of the surrounding circumstances, conclude that lessees did not agree to assume liability for compliance with the improvements ordered by the State Fire Marshal.

We believe that the trial court's reliance on *Sewell* was misplaced; that case is distinguishable. In *Sewell*, the sublessee had examined the premises, knew of their condition and the likelihood that the ordered improvements would be required, and that the sublessors were relieved of all obligations as to repair or maintenance. The California Supreme Court in *Sewell* held that this total disclaimer of the sublessors could only be given the effect of relieving the landlord of any duty to take substantial curative actions. 70 Cal.2d at 675, 75 Cal. Rptr. at 895, 451 P.2d at 727. By comparison, the lessor in this case was not relieved of the obligation to maintain or repair the premises. In paragraph six, lessor agreed to maintain the roof, plumbing, and exterior of the demised premises. These type of repairs or maintenance could be considered of a substantial nature and therefore, unlike in *Sewell*, it was not within the contemplation of the parties that lessees hold the lessor harmless of all maintenance or repair of a substantial nature.

Also in *Sewell* when the sublessee accepted the premises on an "as is" basis, he knew that the improvements were essential and would likely be ordered by the public authority. By contrast, here, when lessees accepted the premises "on an 'as is' basis," the Deming Fire Department had inspected the premises and certified occupancy for both floors. No safety code violations were noted. Therefore, when lessees accepted the premises on an "as is" basis, they contemplated that the building was in full compliance with the safety code. Furthermore, acceptance of the premises on an "as is" basis does not necessarily mean that the tenant is required to make changes of a structural or material nature. *Kanes v. Koutras*, 203 Ga. 570, 47 S.E.2d 558 (1948).

Just as *Sewell* is distinguishable from the instant case, so are other cases where courts have found a tenant's intention to make improvements of a substantial nature. *Cf. Hollywood Bldg. Corp. v. Greenview Amusement Co.*, 315 Ill.App. 658, 43 N.E.2d 566 (1940) (lessee agreed to comply with all regulations to the extent of changes "structural or otherwise"); *Bubeck v. Farmers' Loan & Trust Co.*, 180 App.Div. 542, 167 N.Y.S. 1049 (1917) (tenants bound themselves to comply with orders of public authorities which called for structural changes not specifically exempted from lease agreement).

In *Mid–Continent Life Ins. v. Henry's, Inc.*, 214 Kan. 350, 351, 520 P.2d 1319, 1320 (1974), the court held that the lessee should not bear the cost of alterations ordered by public authorities when:

(1) the improvements were substantial and structural in nature; (2) the improvements will survive the term of the lease between lessor and lessee and thus will inure to the primary benefit of the lessor; (3) the improvements were not required by or because of any particular use made of the premises by the lessee; (4) the cost of such improvements were substantial as opposed to nominal; and (5) the event which necessitated the improvement was unusual, extraordinary and unexpected and not within the contemplation of the parties at the time the lease was executed.

Here the facts fit every criteria listed. First, there is no doubt that a sprinkler system is an alteration of a substantial nature. *See Puget Inv. Co. v. Wenck.* Second, the lease in this case was for a relatively short period of time—five years—and the improvements if made would have reverted to the lessor.[1] *Cf. Gaddis v. Consolidated Freightways, Inc.*, 239 Or. 553, 398 P.2d 749 (1965) (lessees entered into twenty-year lease, giving them an option to purchase at any time after first ten years). Third, there is no evidence that the sprinkler system was required because of the particular use which lessees made of the premises. The premises had been used as a restaurant/bar for several years and lessees continued to so use the premises. Fourth, the cost of installing the sprinkler system was estimated at about $15,000, a far cry from being nominal. And fifth, the need for the sprinkler system was unexpected, particularly under these circumstances, when the Deming Fire Department had given the premises a "clean bill," detecting no safety code violations.

The conclusion is inescapable that a lasting, expensive improvement such as a

---

1. Even though the lease agreement has an option to renew for an additional five years and an option to purchase, under these circumstances we do not find these contract clauses significant. The clauses as written in the lease agreement do not bind the lessor to extend the contract for an additional five years or to sell the property. Both options are within the discretion of the lessor. The option to purchase, although titled as such, is in fact a right of first purchase, giving the lessees the right to purchase when and *if* the lessor decided to sell the property. Thus, for lessees to make extensive, long-lasting improvements that could likely revert to the lessor would be inequitable. Moreover, any costs for these improvements could be carried over in the purchase price at the time of sale or negotiated into the new rental term for an additional five year lease. *See* 1 A.J. Casner, *American Law on Property* § 3.80, at 353–55 (1952).

sprinkler system, at a cost of about $15,-000, which could have likely survived the term of the lease and would have inured to the primary benefit of the lessor, and was not necessitated by the particular use of the premises, could not have been within the contemplation of the parties. *See SKD Enter., Inc. v. L & M Offset*, 65 Misc. 612, 318 N.Y.S.2d 539 (1971).

 The next issue presented is whether, under the facts of the instant case, the lessor's failure to install the sprinkler system amounted to a constructive eviction. Constructive eviction occurs when through the landlord's actions the tenant has been substantially deprived of the beneficial enjoyment of the premises. *Scott v. Prazma*, 555 P.2d 571, 579 (Wyo. 1976). The record shows that lessees were denied the use of the second floor because the State Fire Marshal had demanded that a sprinkler system be installed. As discussed above, the installation of the system was the legal obligation of the lessor, and not the lessees. Because lessor refused to comply with the order, lessees were deprived of their right to possess and enjoy the use of the second floor of the building. Lessor's actions constituted constructive eviction. *See id.*

Lessees contend that because of lessor's breach of the covenant of quiet enjoyment that the payment of the rental should have been suspended in total, citing *Goldberg v. Cosmopolitan Nat'l Bank*, 33 Ill.App.2d 83, 178 N.E.2d 647 (1961) and *Scott v. Prazma*. These cases are distinguishable. In *Scott*, the court found a constructive eviction of the entire premises. Because the lessee had surrendered possession of the entire premises, the lease was treated as terminated, suspending lessee's obligation to pay any portion of the rent. In *Goldberg*, the lessee was evicted from a portion of the premises, continued to remain in possession of the remainder, and the court held that the entire rent was suspended. The *Goldberg* court, however, relied on cases where the evictions were actual, not constructive. An actual eviction

by the landlord, even though it is partial, "suspends the entire rent because the landlord is not permitted to apportion his wrong." *Fifth Ave. Bldg. Co. v. Kernochan*, 221 N.Y. 370, 373, 117 N.E. 579, 580 (1917).

Under constructive eviction cases, however, the tenant must abandon the premises in order to sustain his claim of eviction. *El Paso Natural Gas Co. v. Kysar Ins. Agency*, 98 N.M. 86, 645 P.2d 442 (1982). Here, lessees were compelled to vacate the second floor because of lessor's failure to install the sprinkler system. They continued, nevertheless, to use the first floor of the premises until they were ordered to vacate and surrender the property to the lessor. Because lessees were not deprived of the beneficial use of the first floor of the premises, there was no constructive eviction regarding this portion of the premises. Thus, lessees had an obligation to continue paying a fair rental value for use of the first floor. They cannot recover damages for breach of covenant of quiet enjoyment regarding this portion of the building. *Id.* at 88, 645 P.2d at 444.

We hold, therefore, that lessor's failure to install the sprinkler system in accordance with the safety code amounted to a partial constructive eviction, greatly diminishing the value of the premises in comparison to the consideration for rent. Thus, under these circumstances, it is equitable that the rent owed to the lessor be offset by the extent of the diminished facilities. *See Majen Realty Corp. v. Glotzer*, 61 N.Y.S.2d 195 (1946).

Lessees also filed a counterclaim alleging damages sustained from lessor's interference of the covenant of quiet enjoyment. Lessees claim damages for remodeling and alterations, depreciated value of fixtures and equipment, and lost income. The general rule is that "[w]here the wrongful eviction of a tenant results in the breaking up of his business conducted by him upon the premises, he may recover the damages thereby sustained, including lost profits, provided those damages can be ascertained

with a reasonable degree of certainty." *Polk v. Armstrong,* 91 Nev. 557, 562, 540 P.2d 96, 99 (1975) (citations omitted).

The judgment is therefore reversed. The case is remanded to the trial court to determine the rent owed to the lessor for the diminished facilities. The lessees' counterclaim is also reinstated for the court to determine on the present record whether lessees' alleged damages were contemplated by the parties and can be ascer- tained with a reasonable degree of certainty. Judgment shall be entered accordingly.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.