Argued December 10, 1964, reversed February 3, 1965

# GADDIS *v.* CONSOLIDATED FREIGHTWAYS, INC., ET AL

398 P. 2d 749

*Richard C. Bemis,* Portland, argued the cause for appellant. With him on the briefs were Seitz & Whipple, and Stewart M. Whipple, Portland.

*Hugh L. Barzee,* Portland, argued the cause for respondents. On the brief were Barzee, Leedy & Tassock, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, DENECKE and LUSK, Justices.

SLOAN, J.

Plaintiff is the lessor, defendants the lessees of a building in Portland. The lease was entered into in 1958 for a term of 20 years. The rent reserved for the full term was almost one-half million dollars. Defendants were granted an option to purchase the property for a specified sum at any time after the first ten years of the leased term. In 1962, the Oregon State Bureau of Labor, following an inspection of two freight elevators in the building, requested certain repairs[1] to be made to the elevators. Defendants refused to comply with the plaintiff's demand that they make and pay for the ordered repairs. To avoid possible penalties plaintiff made the repairs. The repairs cost about $7400. He then brought this declaratory judgment proceeding to determine the obligations of the parties as found in the lease.[2] Defendants prevailed in the trial court. Plaintiff appeals.

The pertinent provisions of the lease are:

"8. *USE AND OCCUPATION OF THE PREMISES.* Lessee has examined the Premises, knows the condition thereof, and accepts the same

[1] We used the word "repairs" because that is the word used by the parties in reference to the work done on the elevators. As it appears later herein we do not know the extent to which the Bureau order required new facilities, replacement, renovation or repair in the usual sense of the word.

[2] No question has been raised as to whether or not this is the correct remedy. And it appears that the parties have treated this as an appeal of an equitable character. We take the parties as we find them and will not further consider either question.

in its present condition, and hereby affirms that no representations, express or implied, have been made by Lessor or his agents as to the condition of the Premises. The Premises may be used by Lessee, and others lawfully thereon, for any lawful purpose not in violation of any term or covenant of this Lease; * * *."

"8.1 *COMPLIANCE WITH LAW.* Lessee shall conform to and comply with all applicable laws, provided that Lessee may in good faith dispute the validity or applicability of any such law so long as Lessor's title and rights under this Lease are not thereby jeopardized."

"* * * * * *

"8.3 *MAINTENANCE AND REPAIR BY LESSEE.* Lessee, at its own expense, shall maintain the Premises, including exterior walls, roofs, windows, sky lights, and other structural portions thereof, and the adjacent sidewalks, in a safe, sanitary and weather-proof condition, free of ice and snow, and in as good order and repair as when received, reasonable wear and tear excepted, * * *."

"8.4 *ALTERATIONS AND CONSTRUCTION.* Lessee may, at its sole expense, add any improvements or change or alter any improvement in any manner, provided that all plans and specifications therefor, including demolition of existing improvements or portions thereof shall be first submitted to and approved by Lessor in writing, and provided, further, that Lessee shall not be or become in default of any covenant of this Lease. Lessor shall not unreasonably or arbitrarily withhold its consent in event of any such submission. The provisions of this Section 8.4 shall not apply to the removal of interim partitions and other minor changes or alterations convenient or necessary to adapt the Premises to the uses of lessee or any sublessee hereunder, and Lessor hereby consents to the making of the alterations and changes referred to in this sentence."

■ It hardly need be repeated that in the absence of an agreement in the lease to the contrary, the lessee bears the obligation to repair. *Schenk v. Lamp,* 1961, 229 Or 72, 75, 365 P2d 1068. This is mentioned to show that if the presently contested repairs to the elevators had been necessitated by use or because of any other failure the burden of repair admittably would have been on defendants. It is only because the repairs here were required by a governmental order that gives the lessees-defendants any reason to contest the matter at all. The decisions of the courts are divided as to the extent to which a governmental order may shift the burden of paying for the required changes.

The cases on the subject have been collated in an Annotation at 33 ALR beginning at page 530. Peculiarly, there have been very few cases decided since the date (1924) of that annotation. Comparison of the cases cited and commented on in 3A Thompson, Real Property (1959 Replacement) § 1235, page 184, et seq., with those in the annotation discloses that most of them are the same. The same is true of analysis of the cases found at 1 American Law of Property, 1952, § 3.80, page 353. The last citation provides the most concise review of the cases we have been able to find.

Inasmuch as most of the cases are cited and commented on in the authorities just cited we think it unnecessary to repeat the process here. We agree with the statement in *Evans Theatre Corporation v. De Give Investment Co.,* (Georgia CA 1949) 52 SE2d 655, 659 and 660, wherein it was said: "* * * An examination in that annotation (33 ALR 530) will reveal that the authorities are divided and it is impossible to lay down a rule applicable to all cases.

\* \* \* So it will thus be seen that each case must stand on its particular facts and circumstances." We have found no case which holds categorically that either the lessor or the lessee is bound to make such repairs. The reasons are rather obvious. For a short time lessee to make extensive structural repairs that will shortly revert to the lessor is obviously inequitable. It would be equally inequitable to require a landlord to make repairs when the lease is for a long term and the repairs, or alterations, will be substantially or solely for the benefit of the lessee. In England, it is interesting to note, the regulatory statutes usually provide that any dispute as to an apportionment of the costs of a newly required building change will be referred to a designated court. The court is to apportion costs by a test of what would be equitable and fair. Adaptations in Smoke Control Areas, Who Will Pay—Landlord or Tenant?, 1961, 105 Sol J 539.

We have examined all of the available authority on the subject and conclude, as stated above, that the criterion applied by the courts is briefly but fully stated in 1 American Law of Property, supra, beginning at page 353. Because the statement is concise we copy it in full:

"\* \* \* If the lessee does not expressly covenant to repair, it would seem clear that he generally should be under no duty to make alterations and repairs required by governmental authority in order to conform the premises to health and safety laws. Any changes likely to be ordered for this purpose would be beyond the scope of the tenant's common law duty to repair,\* and the expenses of compliance are properly regarded either as capital expenditures or as necessary carrying charges to be paid out of the rent.\*

"Where the lessee covenants to repair, the ques-

tion of who should bear the cost of compliance depends upon the nature of the alteration or improvement and the reason for requiring it. If the order involves mere repairs which the lessee would normally be required to make under his covenant, he should bear the cost.\* Likewise, the burden is on the lessee where the alteration is required only because of the particular use which he is making of the premises,\* although it may be questioned whether even in this case, the courts would place the burden of extensive and lasting improvements on the lessee, except perhaps where the lease is for a long term. At any rate, if the order requires the making of such improvements, so-called 'structural' changes, and they are not required because of the particular use made of the premises by the lessee, the lessor must bear the burden of compliance.\* (\*Footnotes omitted).

When we apply the tests just mentioned to the facts in this case we conclude that nearly all of the factors to be considered weigh against the tenant. It was acknowledged by the tenant that the repairs required by the Bureau of Labor would have been made at the tenant's expense if they were caused by ordinary wear and tear. We think the same rule would apply for repairs necessitated by the demands of safety to persons and property when no governmental rule was involved. *Garrett v. Eugene Medical Center,* 1950, 190 Or 117, 127, 224 P2d 563. The lease was for a long term, the cost of the repairs were nominal in comparison to the total rental. *Melcher v. Sobel,* 1923, 120 Misc Reports 378, 198 NYS 318. It is doubtful that the benefit of the repairs would have survived the term of the lease and thus revert to the plaintiff. Defendants were not restricted in the use of the building, a consideration mentioned in the cases. *Taylor v. Finnigan,* 1905, 189 Mass 568, 78 NE 203. And,

the option to purchase made any reversion only probable. In this respect we note that in a very exhaustive opinion by Mr. Chief Justice Weintraub in *Crewe Corp. v. Feiler,* 1958, 28 NJ 316, 146 A2d 458, 68 ALR 2d 1279, an option to purchase was given considerable weight in deciding whether a landlord or tenant should pay an unexpected substantial tax increase caused by the tenants improvements.

We assume that all of the repairs were required for purposes of safety. The lease required that defendants were to keep the premises in a safe condition. And, the change in the law which created the need for the repairs was not an extraordinary change of policy, nor one that could not have been reasonably anticipated. For a discussion of the latter variable see *Deutsch v. Robert Hoe Estate Co.,* 1916, 161 NYS 968.

■ In the instant case we are somewhat limited by the facts presented. The case was tried upon a stipulation of facts which provides very little information as to the nature of the repairs required. In many of the cases the courts have recited detailed evidence as to the character of the repairs in reaching a decision. Here, we can only assume that most of the work required was not structural in the same sense that rebuilding a wall, for example, would be. And it is apparent that some of the requirements would be of the housekeeping variety or that they would last no more than a few years at best. Our examination of the cases and the facts presented cause us to hold that the repairs in this instance should have been made by defendants.

Reversed.