605 P.2d 240

**EL PASO NATURAL GAS COMPANY, a corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**KYSAR INSURANCE AGENCY, INC., and Raymond Kysar, Jr., Defendants-Appellees and Cross-Appellants.**

Nos. 3828, 3812.

Court of Appeals of New Mexico.

Nov. 29, 1979.

John B. Pound, Montgomery, Andrews &
Hannahs, Santa Fe, Damon Weems, Farm-
ington, for plaintiff-appellant and cross-ap-
pellee.

James B. Cooney, Cooney & Curtis, Farmington, John R. Cooney, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for defendants-appellees and cross-appellants.

## OPINION

HENDLEY, Judge.

El Paso Natural Gas (El Paso) filed a six count complaint seeking damages and declaratory relief against defendants Kysar Insurance Company and Raymond Kysar (Kysar) based on alternative claims sounding in rescission, reformation, breach of fiduciary duty, and breach of contract. Kysar counter-claimed alleging a breach of the covenant of quiet enjoyment. El Paso filed a motion to dismiss the counter-claim, which was treated as a motion for summary judgment, and Kysar filed a motion for summary judgment on the complaint. Both were granted in their entirety by the court below and were appealed to this court. We reverse in part and remand.

### FACTS

During May, 1972, Western Building Associates (WBA), owners of the Petroleum Building in Farmington, New Mexico, a partnership in which Raymond Kysar was the managing partner and majority shareholder, entered into a lease with Kysar Insurance Company. The lease rented 1,953 square feet of office space for $200.00 per month for five years with an option to renew for two additional five year terms. Mr. Kysar stated that he received a more favorable rental rate than other tenants as compensation for his managing the Petroleum Building and for completing the construction of the office space in question.

On September 3, 1974, Kysar exercised its option to renew for the first additional five year term. El Paso alleged in its complaint that at that time Kysar knew that El Paso was giving serious consideration to exercising an option it held to purchase the building. The option was in El Paso's lease with WBA and was signed by Mr. Kysar.

On February 23, 1975, El Paso gave formal notice of its intent to exercise the option. Due to a dispute over the meaning of the option clause, WBA refused to convey the premises in question and El Paso filed a specific performance action in Federal District Court. *El Paso Natural Gas v. Western Building Associates*, No. 75–198 (USDC–D.N.M., 1976). On April 4, 1977, the federal court ordered WBA to transfer title to the building, along with all net profits acquired during the period in dispute. One of the court's findings of fact was that Kysar's rent was only $200.00 per month and that the management service performed by Mr. Kysar was not part of his rental consideration.

On or about July 1, 1977, El Paso began to manage the building itself. On July 29, 1977, El Paso sent a letter stating that it believed that the actual rent received by its predecessor included Mr. Kysar's services, thereby insisting that Kysar pay an increased cash rental fee. On August 11, 1977, El Paso sent Kysar another letter stating his new rental to be $976.50 per month. On November 29, 1977, El Paso gave Kysar notice to quit based on Kysar's continuing rendition of $200.00 rent. When Kysar refused to vacate the premises, El Paso initiated the instant lawsuit. Throughout all times relevant to this inquiry, Kysar remained in possession of its office space.

At the hearing on the motions for summary judgment, the court below indicated two bases for granting Kysar's motion, one being that the federal court litigation had resolved the controversy and the other being that in purchasing the written lease, El Paso could not contest its express terms. In granting El Paso's motion, the district court felt that Kysar had failed to suffer any damage despite presenting a valid claim.

### RES JUDICATA/COLLATERAL ESTOPPEL

Our first inquiry is whether the related doctrines of *res judicata* and collateral estoppel form an appropriate basis for the granting of Kysar's motion. The doctrine of *res judicata* is inapplicable to the instant controversy. *Phillips v. United Serv. Auto. Ass'n*, 91 N.M. 325, 573 P.2d 680 (Ct.App.

1977), quoting from an early Supreme Court case, stated the legal standards required for a finding of *res judicata*.

> To make a matter res judicata there must be a concurrence of the four conditions following, viz: First, identity of the subject-matter; second, identity of cause of action; third, identity of persons and parties; and fourth, identity in the quality of the persons for or against whom claim is made. *Lindauer Mercantile Co. v. Boyd*, 11 N.M. 464, 475, 70 P. 568, 570 (1902).

See *Atencio v. Vigil*, 86 N.M. 181, 521 P.2d 646 (1974).

Since the federal court suit, which Kysar would have this court find as a bar to the present action, was a specific performance action, the causes of action are dissimilar and, therefore, the doctrine of *res judicata* is inapplicable.

In *State v. Tijerina*, 86 N.M. 31, 519 P.2d 127 (1973), the Supreme Court defined collateral estoppel as follows:

> It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that the issue cannot again be litigated between the *same parties* in any future lawsuit. (Emphasis added.)

Contrary to this view, Kysar would have this court adopt the "modern view of collateral estoppel" first announced by Justice Traynor in *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942). That view holds that it is not essential for one seeking to collaterally enforce the earlier judgment to have been a party to the earlier proceeding, thereby rejecting the validity of the doctrine of mutuality. In *Atencio, supra*, the Supreme Court once again refused to adopt the "modern view of collateral estoppel." We cannot change that holding. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

In this case, Mr. Kysar is a named party based on his affiliation with Kysar Insurance Company, a lessee in the building in question. In the earlier federal suit he was a named party based on his association with WBA. Therefore, Raymond Kysar cannot avail himself of the doctrine of collateral estoppel.

## SUMMARY JUDGMENT ON EL PASO'S COMPLAINT

■ Summary judgment is only appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In determining whether any such material issues of fact exist, all reasonable inferences are to be drawn in favor of the party opposing a motion for summary judgment. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

### 1. *RESCISSION*

■ El Paso's prayer for rescission, based on substantial failure of consideration, was properly dismissed. In *Samples v. Robinson*, 58 N.M. 701, 275 P.2d 185 (1954), the court stated that substantial failure of consideration is an appropriate ground for rescission, but only where the unperformed consideration goes to the essence of the contract and is not compensable damages. The failure of consideration alleged by El Paso is failure to perform services or to pay fair market value for those services. This did not go to the essence of the contract.

■ El Paso's claim for rescission, based on fraud and constructive fraud, was improperly dismissed. The rule in New Mexico is that an instrument may be cancelled where its creation was the product of a fraudulent or inequitable conduct. *Anderson v. Reed*, 20 N.M. 202, 148 P. 502 (1915). In *Anderson, supra*, the Supreme Court found that fraud must often be established by use of circumstantial evidence due to the fact that it generally relates to one's private intentions. It is this very nature of a count in fraud that led the Supreme Court to state, ". . . ordinarily claims of fraud present an issue of fact which cannot be determined on motion for summary judgment." *General Acceptance Corp. of Roswell v. Hollis*, 75 N.M. 553, 408 P.2d 53 (1965). The Supreme Court has defined constructive fraud as ". . . a breach of a legal or equitable duty irrespective of the moral guilt . . . it is not

necessary that actual dishonesty of purpose nor intent to deceive exist." *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970). Therefore, constructive fraud, as well as actual fraud, may be the basis of cancellation of an instrument under *Anderson, supra*. The facts taken in their most favorable light to El Paso raise a material issue of fact as to fraud.

## 2. REFORMATION

El Paso's complaint also stated a prayer for reformation of Kysar's lease with WBA. The only supported basis for this relief is fraud. El Paso would have this court reform the contract to conform to the premises' fair market value. Reformation is appropriate where there is fraud in the execution; that is, where the two parties make an agreement and one of the parties fraudulently causes the contract to state a term varying from the parties' earlier agreement, since the purpose of reformation is to give fruition to what the parties actually agreed. Pomeroy, *Equity Jurisprudence* (5th Ed.), Vol. 3, Sec. 910, pp. 574–576; *Dolph v. Lennon's Inc.*, 109 Or. 336, 220 P. 161 (1923). But where fraud in the inception is alleged (a scheme by which both parties to a contract intentionally include an unfair term in an agreement in order to defraud a third party), reformation is unavailable as the parties' true intentions are already expressed in the agreement and cancellation is the appropriate remedy. *Pomeroy, supra* ; *Dolph, supra*. Summary judgment was proper on this count.

## 3. BREACH OF FIDUCIARY DUTY

El Paso alleges that Kysar, by exercising its option, breached a fiduciary duty owed to El Paso. A lease does not create a fiduciary relationship between landlord and tenant. Nor does the inclusion of an option clause create a special equitable relationship between landlord and tenant. *Durfee House Furnishing Co. v. Great Atl. and Pac. Tea Co.*, 100 Vt. 204, 136 A. 379 (1927). It is only upon exercise of the option that a lessee acquires any equitable interest and rights in property. *Pomeroy,*

*supra*, Sec. 105, Vol. 1, pp. 135–137; *Hardy v. Ramey*, 128 Ga.App. 875, 198 S.E.2d 360 (1973); *Ruark v. Peterson*, 30 Colo.App. 162, 491 P.2d 75 (1971). Since at the time of the alleged breach of fiduciary duty (see Part II, infra.), there existed no vendor-purchaser relationship, but only a landlord-tenant relationship, no such duty existed. Summary judgment was proper as to this count.

## 4. BREACH OF CONTRACT

El Paso's complaint alternatively states an action for breach of contract. The claim rests on the notion that despite the express statement of $200.00 per month rental, the actual intended consideration anticipated by the parties was that monetary value, plus the management services rendered by Mr. Kysar. This may properly be established by the conduct which occurred prior to the exercise of the option. *Schultz and Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972). Based on the affidavits and exhibits submitted below, most especially Mr. Kysar's own testimony that services were part of the rental consideration, we hold that a material issue of fact has been raised.

### COVENANT OF QUIET ENJOYMENT

The general standards for recovery for a breach of the covenant of quiet enjoyment, whether express or implied, have been laid down in *Barfield v. Damon*, 56 N.M. 515, 245 P.2d 1032 (1952); *Kennedy v. Nelson*, 76 N.M. 299, 414 P.2d 518 (1966). In *Barfield, supra*, the court quotes from *McAlester v. Landers*, 70 Cal. 79, 11 P. 505 (1886), with approval:

> As to the covenant for quiet enjoyment, the rule is that there can be no breach without an eviction, actual or constructive. But what acts will constitute such an eviction it is often difficult to determine. It is settled, however, that there need not be an actual dispossession.

In *Kennedy, supra*, the court reacknowledged this broad principle:

> It is a well recognized general principle of law that one claiming constructive eviction must vacate the premises . . . .

However, the general rule is subject to an important qualification. Reoccurrence of conditions or reliance on promises by the landlord to correct the deficiency may create a justification for delay in vacating the premises.

■ The issue before this court is to determine whether the first of the two exceptions announced in *Kennedy, supra* (reoccurrence of interferences by the landlord) has occurred so as to find constructive eviction. When a landlord repeatedly acts with *malice* and in *bad faith* in his attempts to oust a tenant in rightful possession, there is constructive eviction even without actual vacation of the premises by the tenant, as the landlord has breached the covenant of quiet enjoyment.

In *Kuiken v. Garrett*, 243 Iowa 785, 51 N.W.2d 149 (1952), Iowa's Supreme Court found the issue of constructive eviction to turn on whether there was malice and bad faith by the landlord. The Iowa court then discussed its function in relation to this test:

> It is true that a landlord has a right to attempt to oust his tenant, *if he thinks he has just grounds therefor*; and in such case he is not to be held liable for damages if he fails. . . . If he serves repeated notices, and institutes repeated actions, alleging different grounds, and fails to prove any of them upon trial, we think a fair inference of malice may be drawn by a jury. Whether defendants were actually malicious is not for us to determine; we hold only that there was a jury question.

■ We agree that the determination of the existence of malice is a question to be left to a jury. Taking all reasonable inferences in a light most favorable to Kysar, summary judgment on this issue was improperly granted. *Goodman v. Brock, supra.*

■ The court below felt that Kysar had stated a valid claim, but had not suffered any damages. Kysar has alleged $7,500 in compensatory damages and should have an opportunity to prove them at trial.

Those portions of the trial court's order inconsistent with this opinion are reversed and the other portions are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.