142 P.3d 17 (2006)
2006-NMCA-099
Robert DAVIS, Individually and as a Representative of a class of persons within the State of New Mexico, Plaintiff-Appellant,
v.
FARMERS INSURANCE COMPANY OF ARIZONA, and each affiliate within Farmers Insurance Group, a joint venture, Defendants-Appellees.
No. 25,312.
Court of Appeals of New Mexico.
June 13, 2006.
Certiorari Granted September 13, 2006.
As Revised September 13, 2006.
*19 Morgan Law Office, Limited, Ron Morgan, Whitney Buchanan, P.C., Whitney Buchanan, Albuquerque, NM, for Appellant.
Rodey, Dickason, Sloan, Akin & Robb, P.A., Andrew G. Schultz, Albuquerque, NM, Jackson Walker, L.L.P., Thomas T. Rogers, Mark L. Walters, Austin, TX, for Appellees.
Certiorari Granted, No. 29,895, September 13, 2006.

OPINION
KENNEDY, Judge.
{1} The dispute in this case concerns coverage under an automobile insurance policy. The question in this appeal is whether, under Plaintiff's collision coverage, Farmers Insurance Company (Farmers) must pay for the vehicle's loss of market value on top of adequately repairing the damaged vehicle. The trial court granted summary judgment in favor of Farmers and Plaintiff appeals.
{2} This is an issue of first impression in New Mexico. There is a nationwide split in authority on whether, under policies like Plaintiff's, insureds can recover the diminished market value of their vehicle after having the vehicle fully and adequately repaired. While this question must always depend upon the actual language of the insurance policy, the language in certain coverage provisions has been analyzed extensively in other jurisdictions. Today, we choose to follow the majority trend towards disallowing recovery for the diminished market value under the terms of Plaintiff's insurance policy. We affirm.

BACKGROUND AND FACTS
{3} Two months after buying a new truck, Plaintiff wrecked it. He was insured by Farmers, who adequately repaired the truck. After the repairs were completed, Plaintiff traded his truck in for another new one. Plaintiff accepted as a trade-in value $15,000 less than he estimated his old truck was worth before it was wrecked. Plaintiff then claimed that he was entitled to payment for this "loss in market value" under his insurance policy. Farmers disagreed, and refused to pay this claim.
{4} Part IV of Plaintiff's insurance policy stated that Farmers would "pay for loss to your insured car caused by collision." This section defined "loss" as the "direct and accidental loss of or damage to your insured car, including its equipment." In the "Limits of Liability" section, the policy stated that Farmers' "limits of liability for loss shall not exceed . . . [t]he amount which it would cost to repair or replace damaged . . . property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation." In the "Payment of Loss" section, Farmers stated that it would "pay the loss in money or repair or replace damaged . . . property."
{5} Plaintiff filed a complaint against Farmers claiming: (1) breach of contract, (2) violation of the covenant of good faith and fair dealing, (3) violation of the New Mexico Insurance Code, (4) violation of the New Mexico Unfair Practices Act, and (5) breach of fiduciary duty. Farmers moved to dismiss the complaint and Plaintiff moved for summary judgment. The trial court denied Plaintiff's motion for summary judgment and granted summary judgment in favor of Farmers. Plaintiff appeals and we affirm.

DISCUSSION

Standards of Review and Policy Interpretation
{6} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment *20 as a matter of law." Self v. United Parcel Serv., Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Where issues on appeal involve only questions of law, we review those questions de novo. Id.
{7} The issue in this case concerns the interpretation of Plaintiff's insurance policy. We construe the insurance policy as a whole and determine whether ambiguities exist in the language of the contract. See Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶¶ 19-20, 123 N.M. 752, 945 P.2d 970. When a term is undefined in the policy, we may look to that term's "usual, ordinary, and popular" meaning, such as found in a dictionary. Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 (internal quotation marks and citation omitted). A split in legal authority may be indicative of an ambiguity in the policy, but does not establish one. Allgood v. Meridian Sec. Ins. Co., 836 N.E.2d 243, 248 (Ind.2005). When, and only when, an ambiguity is found, do we liberally construe the policy in favor of the insured. Battishill, 2006-NMSC-004, ¶ 17, 139 N.M. 24, 127 P.3d 1111.
{8} We give the language in the policy its plain and ordinary meaning. Cooper v. Chevron U.S.A., Inc., 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. We do not "strain or torture" the language in order to "create an ambiguity." State Farm Mut. Auto. Ins. Co. v. Luebbers, 2005-NMCA-112, ¶ 9, 138 N.M. 289, 119 P.3d 169 (internal quotation marks and citation omitted), cert. granted, 2005-NMCERT-8, 138 N.M. 330, 119 P.3d 1267. "[T]he issue is how a reasonable insured would understand the term at the time of purchase." Battishill, 2006-NMSC-004, ¶ 11, 139 N.M. 24, 127 P.3d 1111. If the language in the policy is clear, this Court must then enforce the contract as written. See Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960.

"Loss" Does Not Include "Loss in Market Value" Under Plaintiff's Policy
{9} Plaintiff's primary argument is that his policy should be broadly interpreted to include diminished market value plus the cost of repairs. In other words, Plaintiff claims that the phrase "direct and accidental loss of or damage to your insured car" must be interpreted broadly to include any type of "loss," including the diminished market value of his vehicle. We disagree.
{10} In the policy, the definitions of "loss" were set out in the alternative: loss was either the "loss of" the truck or "damage to" the truck. The plain meaning of "loss of" a vehicle in a collision is that the vehicle was a complete loss. See 6 John Alan Appleman & Jean Appleman, Insurance Law & Practice § 3881, at 359 (1972) (stating that the "total loss" of a vehicle occurs "when the cost of repairs exceeds the value of the vehicle, or where the automobile cannot be restored to the same condition as before the accident"). Here, Plaintiff concedes that there was not a "total loss" of his truck. Instead, there was "damage to" the truck, which was satisfactorily repaired. While the vehicle's reputation might suffer after a collision, any "damage to" the truck must be "direct" under Plaintiff's policy. See Black's Law Dictionary 964 (8th ed.2004) (defining a "direct loss" as a "loss that results immediately and proximately from an event" and a "consequential loss" as a "loss arising from the results of damage rather than from the damage itself . . . [a]lso termed indirect loss"); see also Webster's Third New International Dictionary (unabridged) 640 (1993) (variously defining "direct" as "marked by absence of an intervening agency, instrumentality, or influence: IMMEDIATE," "stemming immediately from a source," "characterized by or giving evidence of a close esp. logical, causal, or consequential relationship," and "INEVITABLE"); see also Cooper, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 (stating that policy language must be given its plain and ordinary meaning).
{11} Plaintiff's loss of market value cannot be shoe-horned into the coverage for direct damage to his truck. See Ponder, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960. Contrary to Plaintiff's arguments, the policy's language cannot be interpreted as broad enough to "cover any loss to the pre-collision position of the consumer" and does not contain a promise to compensate the insured *21 with the full panoply of damages available in tort.

Plaintiff May Not Recover Under the "Limits of Liability" Section of His Policy
{12} Plaintiff contends that, because neither the "Exclusions" portion nor other portions of the policy excludes loss of market value from the broad definition of "loss," the policy must provide coverage for diminished market value. Contrary to Plaintiff's suggestion, it was not necessary for Farmers to specifically exclude a loss in market value unless the insurance policy, when read as a whole, actually includes such coverage. See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 160 (Tex.2003) ("Absence of an exclusion cannot confer coverage."). We have already discussed how such coverage is not included in the "Loss" section of Plaintiff's policy. To read the policy as a whole, we must now consider this provision in relation to the rest of the policy to determine whether the policy extends coverage to include diminution in value following repairs. See Rummel, 1997-NMSC-041, ¶ 20, 123 N.M. 752, 945 P.2d 970.
{13} The "Limits of Liability" section of Plaintiff's policy reads:
Our limits of liability for loss shall not exceed:
1. The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation.
This section, set forth in the disjunctive, allows Farmers to repair or replace at its option. It is not contested either that Farmers chose the former option or that this case does not involve repairs that were inadequate or somehow problematic.
{14} Farmers limited its liability to an amount that would "not exceed . . . [t]he amount which it would cost to repair or replace damaged . . . property." Farmers contends that this language unambiguously does not constitute a promise to pay for diminished market value. We agree.
{15} The "repair" of a physical thing (like a vehicle) is commonly defined as "to restore by replacing a part or putting together what is torn or broken" and is synonymous with "FIX" and "MEND." Webster's New Third International Dictionary, supra, at 1923. "Replace" has two meanings: (1) to restore something or someone "to a former place, position, or condition" and (2) to "provide a substitute or successor for." Id. at 1925. The latter definition would apply, since Plaintiff's policy states that replacements are made "with . . . other of like kind and quality." Since it is uncontested that no "substitution" is involved in this case, we see harmony in regarding both repair and replacement to encompass restoration of Plaintiff's vehicle from its damaged state.
{16} The modern majority of cases agree that "repair or replace" unambiguously refers to physical restoration of the vehicle. "[R]epair means to restore something to its former condition, not necessarily to its former value." See Allgood, 836 N.E.2d at 247; see also Pritchett v. State Farm Mut. Auto. Ins. Co., 834 So.2d 785, 791 (Ala.Civ.App. 2002) ("The various definitions of repair do not discuss the concept of value. We do not believe that in its common usage, the term `repair' is understood to encompass the concept of value or require a restoration of value."); O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 290 (Del.2001) (holding that the "repair or replace" language in the plaintiff's policy was "not ambiguous and that this language does not contemplate payment for diminution of value. In the common usage, the word `repair' means to fix by replacing or putting together what is broken, or . . . to bring back to good or useable condition." (internal quotation marks and citation omitted)); Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 736 (Fla.2002) (holding that the insurer's obligation to "repair or replace" the vehicle "is limited to the amount necessary to return the car to substantially the same condition as before the loss. Nowhere does that obligation include liability for loss due to a stigma on resale resulting from market psychology" (internal quotation marks and citation omitted)); Campbell v. Markel Am. Ins. Co., 822 So.2d 617, 627 (La.Ct.App.2001) ("[T]he better view of the *22 `repair or replace' limitation is that it caps [the insurer's] liability at the cost of returning the damaged [vehicle] to substantially the same physical, mechanical, and cosmetic condition as existed before the loss. There is no concept of `value' in the ordinary meaning of the word `repair.' To ascribe to the words `repair or replace' an obligation to compensate the insured for things that, by their very nature, cannot be `repaired' or `replaced' would violate the most fundamental rules of contract construction."); Hall v. Acadia Ins. Co., 801 A.2d 993, 995 (Me.2002) ("The act of repairing an object typically focuses upon restoring the object's function and purpose, and not upon returning the object to its earlier worth or value."); Given v. Commerce Ins. Co., 440 Mass. 207, 796 N.E.2d 1275, 1280 (2003) ("There is nothing exotic about the words `repair or replace' as used in the standard policy  both words, in their ordinary usage, refer to the remedying of tangible, physical damage."); Lupo v. Shelter Mut. Ins. Co., 70 S.W.3d 16, 22 (Mo. Ct.App.2002) ("There is no concept of `value' in the ordinary meaning of the word repair."); Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 579 S.E.2d 132, 135 (2003) ("There is no concept of value in the ordinary meaning of" the words "repair" or "replace."); Culhane v. W. Nat'l Mut. Ins. Co., 704 N.W.2d 287, 295 (S.D.2005) ("[T]he ordinary meaning of the words `repair' and `replace' indicate [sic] something physical and tangible."); Schaefer, 124 S.W.3d at 158-59 ("The concept of `repair' with regard to a vehicle connotes something tangible, like removing dents or fixing parts. We do not believe that the ordinary or generally accepted meaning of the word `repair' connotes compensating for the market's perception that a damaged but fully and adequately repaired vehicle has an intrinsic value less than that of a never-damaged car." (citations omitted)). But see State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 556 S.E.2d 114, 120-22 (2001) (allowing recovery for diminished market value because of 75 years of Georgia precedent that incorporates a value element into "repair" so "that the insured will be made whole" (internal quotation marks and citation omitted)). We agree with the majority of authorities that a promise to compensate the insured for diminished market value is not included within the notion of fixing a vehicle. See Culhane, 704 N.W.2d at 298-99. A reasonable insured would not read these phrases any other way, because diminished market value following a collision cannot be repaired, fixed, or mended as we understand those terms. See O'Brien, 785 A.2d at 290-91; Allgood, 836 N.E.2d at 247-48; Hall, 801 A.2d at 996; Given, 796 N.E.2d at 1280 ("We will not torture the plain meaning of the terms `repair' and `replace' to encompass `repair' or `replace[ment]' of damage caused by stigma, a form of damage that, by definition, defies remedy by way of `repair' or `replace[ment].'" (alterations in original)).
{17} We therefore hold that the "repair or replace" language in Plaintiff's policy does not intimate a promise to Plaintiff to pay for diminished market value. We believe that cases to the contrary, like Mabry, incorporate the tort concept of making the injured whole into the idea of "repair." See Mabry, 556 S.E.2d at 121. This measure of damages does not belong in our interpretation of an insurance policy. See, e.g., Ray v. Farmers Ins. Exch., 200 Cal.App.3d 1411, 246 Cal.Rptr. 593, 595 (1988); Given, 796 N.E.2d at 1278-79; Culhane, 704 N.W.2d at 297; Bickel v. Nationwide Mut. Ins. Co., 206 Va. 419, 143 S.E.2d 903, 905 (1965).
{18} Plaintiff's policy caps Farmers' liability to what it would cost to "repair or replace damaged or stolen property with other of like kind and quality." (Emphasis added). Plaintiff argues that the phrase "like kind and quality" would give a reasonable insured the expectation that diminished market value was covered under his or her policy. We disagree.
{19} When the property here (Plaintiff's truck) was physically repaired, it was necessary that any replacements be "of like kind and quality." The phrase "repair . . . with other of like kind and quality" is nonsensical, indicating that "like kind and quality" was not meant to modify "repair."
[T]his contract makes clear that "like kind and quality" refers to "replace," not "repair" which encompasses the notion of restoring *23 property to its former condition. Only to the extent parts are replaced does a "repair" entail "property of like kind or quality." To say one would repair an item with goods of like kind or quality is simply not correct English. An item of property (or a part of that item) is "replaced" with other property, but it is "repaired" with tools and labor. We therefore conclude that "like kind and quality" unambiguously refers only to replacement, not to repairs[.]
Allgood, 836 N.E.2d at 247-48.
{20} Even to the extent that a reasonable insured might misinterpret "with other of like kind and quality" as pertaining to "repair," to then interpret these phrases to encompass diminished market value would not be reasonable. "Like" in this context means "the same or nearly the same (as in nature, appearance, or quantity)." Webster's Third New International Dictionary, supra, at 1310. "Kind" in this context refers to "a specific variety: TYPE, BRAND." Id. at 1243. "Quality" variously refers to "degree of excellence: GRADE, CALIBER" and "degree of conformance to a standard (as of a product or workmanship)." Id. at 1858. While these definitions, separated from their context, might support Plaintiff's argument, putting these ideas back into context defeats it. We believe that
whether or not intrinsic value generally inheres in the word "quality," and assuming without deciding that the phrase "of like kind and quality" modifies both "repair" and "replace," we must look to the ordinary meaning of the words that are modified. We have said that the words "repair" and "replace," with regard to a vehicle, connote something tangible, like removing dents, fixing parts, or replacing the vehicle with a comparable substitute. Thus, if an insurer elects to repair a vehicle and must replace parts in doing so, it must use parts "of like kind and quality." Likewise, if an insurer elects to replace the vehicle, it must do so with a vehicle "of like kind and quality."
Schaefer, 124 S.W.3d at 160; see also Siegle, 819 So.2d at 736 (interpreting "like kind and quality" to "require that the insurer place the insured in possession of a car `the same or nearly the same' as the damaged auto, in terms of the `fundamental nature' and `degree of excellence' of the automobile" (citation omitted)).
{21} Therefore, while we agree that the meanings of "like," "kind," and "quality," may include a value element, that element is lost when these words are put into the context of Plaintiff's policy as a whole. See Rummel, 1997-NMSC-041, ¶ 20, 123 N.M. 752, 945 P.2d 970. We thus disagree with cases like Hyden v. Farmers Insurance Exchange, 20 P.3d 1222 (Colo.Ct.App.2000), which found ambiguity in the phrase "like kind and quality" without grounding those few words in the rest of the policy, or even the remainder of the sentence. See id. at 1225 (allowing recovery for diminished market value because there is "and" between "like kind and quality," instead of "or"). We hold that a reasonable insured could not read "diminished market value" into the phrase "like kind and quality" in the context of Plaintiff's policy.

Payment of Loss
{22} In the "Payment of Loss" section of Plaintiff's policy, Farmers stated that it would "pay the loss in money or repair or replace damaged . . . property." Farmers contends that no reasonable insured could read an additional payment for diminished market value into this provision. We agree.
{23} This provision clearly sets forth three options in the disjunctive: money payment, repair, or replacement. This language does not contain words like "and" or phrases like "in addition to." This provision does not contemplate a cash payment for diminished market in addition to repairs.

"Lesser Of" Compared to "Shall Not Exceed"
{24} Plaintiff contends that cases that have disallowed diminished market value are "entirely useless to this appeal" because they analyzed policies that limited the insurer's liability to the "lesser of" the available options. In his policy there is no such language. He therefore argues that the policy language in this case that Farmers' liability "shall not exceed" the repair or replacement *24 of damaged property "with other of like kind and quality" means that Farmers will "pay no more than a `ceiling' as the highest cost of its loss," whereas policies that use "lesser of" language obligate the insurer to pay no more than required by the lowest-cost alternative. We disagree with this interpretation. Plaintiff is essentially arguing that, if a policy includes "lesser of" or "lower of" language, the insurer has a choice, but if the policy uses "shall not exceed" language, the insurer must pay the highest-cost alternative.
{25} This trivial difference in language has no impact on our analysis. We have relied on the above cases only to the extent that they analyze language in Plaintiff's policy. Furthermore, there are a number of cases that have disallowed diminished market value where the policies contained the same or similar "will not exceed" language that is in Plaintiff's policy. See, e.g., Gen. Accident Fire & Life Assurance Corp. v. Judd, 400 S.W.2d 685, 686-87 (Ky.1966) (disallowing recovery of diminished market value where the plaintiff's policy stated that the insurer's liability would "not exceed the actual cash value. . . nor what it would then cost to repair or replace the property"); Given, 796 N.E.2d at 1277 (disallowing recovery of diminished market value where the insurer's liability was limited to "never pay[ing] more than what it would cost to repair or replace the damaged property" (internal quotation marks omitted)); Lupo, 70 S.W.3d at 19, 23 (same).

Ambiguity and the Lack of a Specific Exclusion
{26} Plaintiff contends that the policy is ambiguous because it has "elusive remedial alternatives," suffers from a "lack of narrowness and preciseness" in its limits of liability, and does not specifically exclude diminished market value. We disagree. As explained above, the options that Farmers had under the policy were clear: cash payment, repair, or replacement. Farmers clearly limited its liability to one of these three options, and a combination of these options is not implied. We hold that Plaintiff's policy, when read as a whole, unambiguously did not provide coverage for diminished market value in addition to adequate repairs. See Ponder, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (stating that where the policy is clear, we enforce it as written). There was no need for Farmers to specifically exclude what was not covered under the policy. See Siegle, 819 So.2d at 740 (holding that "the existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss"); Schaefer, 124 S.W.3d at 160 (noting that, where an obligation to pay for diminished value is not included in the policy's language, the lack of an exclusion "cannot confer coverage").

The Matter of Choice, Good Faith, and Fair Dealing
{27} The true issue in Plaintiff's brief is the matter of choice under his insurance policy. As explained above, Farmers' liability was limited to either physically repairing or replacing Plaintiff's damaged vehicle. Farmers could then pay for this loss in one of three ways: repairing or replacing the vehicle, or a cash payment. Farmers had options, and it obviously chose the least expensive to itself. Plaintiff's remaining element of loss does not transform his policy into a promise to pay for losses not covered by the policy. See Siegle, 819 So.2d at 740; see also Culhane, 704 N.W.2d at 296 ("While one may debate whether it is rational to only insure part of a loss, that debate is irrelevant because [the insurer's] indemnification obligation is governed by the terms of its contract. Stated in other words, the contractual indemnification obligation is not governed by [the plaintiff's] post-loss feeling of what should be reasonably or rationally covered."). To interpret Plaintiff's policy as including diminished market value would violate the plain language of Plaintiff's policy and negate the insurer's options. See Siegle, 819 So.2d at 739 (stating that including diminished value in the coverage under the policy "would negate the insurer's choice of remedy explicitly contained in the contractual text"); Allgood, 836 N.E.2d at 248 (noting that including an obligation to pay for diminished value in addition to the cost of repairs would render the language in the liability limitation section meaningless); Lupo, 70 S.W.3d at 22 *25 (holding that interpretation of the contract's terms to include diminution in value "would go beyond the phrase's common prevailing meaning of which an ordinary insured would reasonably understand the phrase to mean," and would "render meaningless" the insurer's right to make a choice as expressed in the contract). We only reiterate what the plain language of the policy states: Farmers had three clear options, and paying diminished market value cannot be read into those options where Farmers has exercised the option to repair, and done so adequately.
{28} Yet Plaintiff argues that Farmers' decision to choose the least expensive alternative under the policy, and its failure to explain the legal uncertainty to him, was a breach of Farmers' duties of good faith and fair dealing. Where an insurer acts in accordance with the express language and obligations under an insurance policy, there is no violation of an implied covenant of good faith and fair dealing. See Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶ 49, 133 N.M. 669, 68 P.3d 909. As discussed in this opinion, Farmers complied with the express terms of the insurance policy in this case. Therefore, Farmers did not violate its duties to Plaintiff.
{29} Plaintiff, citing to Hendren v. Allstate Insurance Co., 100 N.M. 506, 672 P.2d 1137 (Ct.App.1983), claims that Farmers was required to "explain uncertainties in the law" that would affect the limits of Farmers' liability under Plaintiff's insurance policy. As we explained in Hendren, an insurer is not required to take such affirmative action as informing an insured of all "possible legal interpretations and judicial decisions" that might affect coverage. Id. at 511, 672 P.2d at 1142. However, an insurer that "takes it upon itself to offer advice" to an insured must "correctly state policy limits and uncertainties." Id. There is no suggestion that the insurer in this case acted in the same way as the insurer in Hendren. The holding in Hendren did not require Farmers to "explain uncertainties in the law" to Plaintiff.
{30} Farmers notes that Plaintiff appears to raise the new theory on appeal that his vehicle should have been declared a total loss and replaced. Plaintiff insists that he has all along argued that Farmers was required to act in good faith, and that the "most appropriate" remedy for Plaintiff's claim under the policy would have been "replacement with a deduction for depreciation of the wrecked vehicle." To the extent that Plaintiff is now claiming that his vehicle should have been declared a total loss, that argument was not brought to the attention of the trial court. See Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (holding that preservation serves the purposes of allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal, and creating a record from which the appellate court can make informed decisions). Below, Plaintiff consistently argued that he was entitled to payment for the diminished market value of his vehicle, but did not argue that he was entitled to have his vehicle declared a total loss and replaced. Therefore, we do not address this argument.

CONCLUSION
{31} We hold that Plaintiff's insurance policy was unambiguous in not providing coverage for the diminished market value of his truck following a collision, where his truck was adequately repaired. We hold that Farmers did not breach its duty of good faith and fair dealing when it did not explain this possibility to Plaintiff, or when it chose the least expensive of its options under the policy. We hold that Plaintiff did not preserve his argument that Farmers was obligated to replace his vehicle. We therefore affirm.
{32} IT IS SO ORDERED.
WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.